# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT



ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

September 19, 2018

Steven M. Larimore
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  16-15521-AA
Case Style: USA v. Damaso Rivera Fonseca
District Court Docket No: 1:15-cr-20802-DPG-1

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to:  Lois Tunstall
Phone #:  (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

## UNITED STATES COURT OF APPEALS
### For the Eleventh Circuit
_____

No. 16-15521
_____

District Court Docket No.
1:15-cr-20802-DPG-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DAMASO RIVERA FONSECA,

Defendant - Appellant.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is
entered as the judgment of this Court.

Entered: March 07, 2018
For the Court: DAVID J. SMITH, Clerk of Court
By: Jeff R. Patch

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-15521

_____

D.C. Docket No. 1:15-cr-20802-DPG-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DAMASO RIVERA FONSECA,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 7, 2018)

Before JORDAN and JILL PRYOR, Circuit Judges, and REEVES,[*] District Judge.

PER CURIAM:

_____

[*] The Honorable Danny C. Reeves, United States District Court for the Eastern District of Kentucky, sitting by designation.

After a five day trial, a jury found Damaso Rivera Fonseca guilty of (1) being a felon in possession of a firearm and ammunition, *see* 18 U.S.C. § 922(g)(1); (2) possession of marijuana with intent to distribute, *see* 21 U.S.C. § 841(a)(1), (b)(1)(D); and (3) possession of a firearm in furtherance of drug trafficking, *see* 18 U.S.C. § 924(c)(1)(A).  The jury found him not guilty of possession of cocaine with intent to distribute.  The district court sentenced Mr. Fonseca to 235 months, with 115 months to be served concurrently for each of the first two counts, and 120 months to be served consecutively for the third count, followed by five years of supervised release.

Mr. Fonseca now appeals.  After reviewing the record, and with the benefit of oral argument, we find none of his arguments meritorious, and affirm his conviction and sentence.

# I

## A

At 2:30 a.m. on October 5, 2015, a woman entered a Walgreens store in Aventura, Florida, became panicked, and told the overnight manager that her crazy boyfriend was outside in a blue van with a big gun.  She said he was going to come into the store, shoot up the store, and kill all of them.  The manager called 911 and relayed this information, and the 911 operator dispatched Aventura police units to the store.

Officer James Martin, who responded to the 911 call, testified that he received a call from dispatch advising that a robbery was about to take place at the Walgreens at 18665 Biscayne Boulevard in Aventura, and that the suspect had a rifle and was in a blue van.  When Officer Martin arrived at the Walgreens, he observed a van matching that description parked right in front of the door to the pharmacy.  In the van, Officer Martin saw a man hunched over and moving around in the rearmost seat with a long object extending up from his person.  Officer Martin ordered the man, later determined to be Mr. Fonseca, from the van and took him into custody.  Officer Martin smelled a strong odor of marijuana coming from the open door of the van.  He also saw the stock of an AR-15 rifle sticking up in plain view, but partially covered by clothing, in the rear seat of the van where Mr. Fonseca had been sitting.

Another Aventura police officer, Officer Ricardo Moreno, similarly testified about responding to the dispatch concerning a possible robbery by an armed man in a blue van at the Walgreens.  He identified Mr. Fonseca as the person who was in the van with the object that was later confirmed to be an AR-15.  He testified that when the police arrested Mr. Fonseca, they found $891 in his wallet.

Officer Moreno additionally described what he and the crime scene investigators who inventoried the van located during their vehicle search:  an AR-15 with a round in the chamber, a magazine of 29 rounds inserted, and the weapon

on "fire"; an additional 28 rounds of ammunition; six cell phones; a rifle case; narcotics; marijuana; large and small Ziploc baggies; and a container which appeared to be a sugar shaker, but which had been modified to conceal more baggies of narcotics.

Several crime lab personnel, ATF agents, and experts testified about the physical evidence in the case. ATF Agent Carlos Perez testified that the blue van was registered to Sonia Fonseca Baez, who lived at the same location as Mr. Fonseca. Agent Perez also testified that he obtained a warrant for and performed DNA swab tests on Mr. Fonseca, and that he sent the rifle and ammunition for comparative DNA testing. Olga Saavedra, who performed the DNA tests on the rifle, ammunition, and magazine, and who testified as an expert, concluded that Mr. Fonseca's DNA was a virtually-certain match to DNA found on the rifle. Melissa Darby, a criminalist, testified that cocaine and marijuana were present within the samples found in the van. Detective Wayne Tillman, who testified as an expert in street-level drug trafficking and distribution, explained that the physical evidence found in the van was consistent with the trade of street-level drug traffickers.

ATF   Special   Agent   Katherine   Brady   testified   about   post-*Miranda*[1]
statements Mr. Fonseca made to her immediately before and while she transported
him from the Aventura Police Department to the Miami Federal Detention Center.
Agent Brady testified that when Mr. Fonseca saw his girlfriend in a police car
outside the Aventura police station, he told Agent Brady that the narcotics and the
firearm found earlier in the blue van belonged to him, and that his girlfriend should
not face any charges for them.

Agent Brady also testified that, during the drive, Mr. Fonseca stated that the
blue van belonged to his mother and that he wanted to return it to her.  Mr. Fonseca
said he needed a gun for protection from enemies, and that he would rather be
caught with a gun than be caught without one and be dead.  He said that he knew
he was a felon and was not allowed to possess a firearm.  Finally, he stated that he
had recently obtained this firearm on the street, and that he would acquire another
gun once he got out of prison this time.  Agent Brady testified that she did not
initiate any of these conversations.

The government presented a joint stipulation that Mr. Fonseca had been
previously convicted of a felony, and that he was unable to own, possess, or use
firearms.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

**B**

Before trial, Mr. Fonseca filed a motion to suppress the physical and testimonial evidence associated with his arrest, and the district court held a hearing to determine whether suppression was appropriate. Mr. Fonseca filed a pre-trial motion in limine, requesting that the district court exclude any evidence relating to allegations of attempted armed robbery. At the pretrial hearing, the district court heard the audio recording of the 911 call from the Walgreens manager. Officer Martin and Agent Brady testified about their observations regarding, and their involvement with, Mr. Fonseca's arrest, his interrogation, his transport from the Aventura police station to FDC Miami, and the vehicle inventory.

The district court denied the motion to suppress after finding that Mr. Fonseca's arrest was lawful, the items at issue were properly seized, and Mr. Fonseca's statements were made freely and voluntarily. The district court based its probable cause finding, in part, on the statement Mr. Fonseca's girlfriend had made to the Walgreens manager that Mr. Fonseca was going to "come in and shoot up the place" — a statement which the district court said was not an anonymous tip because it was made by "a woman who is intimately known to the defendant." The district court also found that probable cause existed based on the identification and description, in the 911 call, of a blue van parked in front of the store, with a man

inside with a large rifle.  This description matched what the police found upon their arrival.

Next, the district court found that the vehicle search was conducted lawfully because it was a search incident to a lawful arrest.  In addition, the district court said the search was lawful based on the automobile exception to the Fourth Amendment, or as an inventory search.  Finally, the district court found no constitutional violation regarding Mr. Fonseca's statements to Agent Brady, because the statements were spontaneous, and were freely and voluntarily made.

The district court also heard argument about Detective Tillman's proposed expert testimony regarding the drug trade, and found that his testimony would be probative and not unduly prejudicial.  The district court specifically allowed Detective Tillman to testify that, based on his training and experience, the physical evidence in Mr. Fonseca's case was consistent with distribution.  But the district court placed limitations on the testimony — Detective Tillman would not be permitted to testify about the defendant's state of mind.

## II

In reviewing a district court's ruling on a motion to suppress, we review the district court's factual findings for clear error, and the application of law to those facts *de novo.  See United States v. Mercer*, 541 F.3d 1070, 1073-74 (11th Cir.

2008).  We construe all facts in the light most favorable to the party that prevailed in the district court — here, the government.  *See id.* at 1074.

We review the district court's decisions regarding expert testimony, motions in limine, and a motion for a new trial for an abuse of discretion.  *See United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (expert testimony); *Al-Amin v. Smith*, 637 F.3d 1192, 1195 (11th Cir. 2011) (motions in limine); *United States v. Sweat*, 555 F.3d 1364, 1367 (11th Cir. 2009) (new trial).  Under this standard, we affirm unless we find that the district court made a clear error of judgment or applied the wrong legal standard.  *See Frazier*, 387 F.3d at 1259.

We review *de novo* the district court's interpretation and application of the sentencing guidelines. *See United States v. McVay*, 447 F.3d 1348, 1352-53 (11th Cir. 2006).

### III

Mr. Fonseca makes five arguments on appeal.  We address each in turn.

### A

First, Mr. Fonseca argues that the district court erred in denying his motion to suppress physical and testimonial evidence.  As in his motion to suppress, he objects to the government's introduction of the AR-15 rifle, ammunition, marijuana, cocaine, digital scale, clear plastic baggies, and money discovered on his person and in the vehicle subsequent to his arrest.   He claims that the police

had no probable cause to arrest him, and that all evidence seized after this illegal arrest should have been suppressed.

The government responds that the police had probable cause to arrest Mr. Fonseca, and that the subsequent search of his vehicle was a lawful search incident to his arrest.  The government points to the content of the 911 call, the dispatch the police received based on that call, and the match between the content of the 911 call and what the officers found upon arriving at the Walgreens as establishing probable cause.  The government contends that the officers' observations of a man holding a long object — potentially a rifle — inside the van, and the strong smell of marijuana emanating from the van when the man opened the door, further established probable cause for arrest.

The government contends that the search of the van was permissible under multiple legal frameworks.  First, the government contends that it was a search incident to lawful arrest, because pursuant to *Arizona v. Gant*, 556 U.S. 332 (2009), it was reasonable for the officers to believe that evidence of the offense of arrest might be found in the vehicle.  Second, the government argues that under *United States v. Tamari*, 454 F.3d 1259, 1264 (11th Cir. 2006), the automobile exception to the Fourth Amendment applied, because both probable cause and exigent circumstances existed.  Third, the government claims that pursuant to *Colorado v. Bertine*, 479 U.S. 367, 371-72 (1987), the inventory exception to the

Fourth Amendment applied, because the van was impounded following Mr. Fonseca's arrest in keeping with the police department's procedures.

The district court based its factual findings and suppression ruling on the audio recording of the 911 call, as well as on the testimony of Officer Martin and Agent Brady. In finding probable cause, the district court relied on the girlfriend's description of her boyfriend's impending crime — that he was going to come in and shoot up the place — and the fact that she was not an anonymous tipster but a person who intimately knew Mr. Fonseca. The district court also noted the close correlation between what the girlfriend had described and what the police observed when they arrived on the scene as supporting probable cause, a blue van parked in front of the Walgreens with a man inside holding a long item in a shape similar to that of a rifle. On this record, we do not believe the district court erred in concluding that the officers had probable cause to arrest Mr. Fonseca. And because Mr. Fonseca's arrest was lawful, the subsequent search of his vehicle was a lawful search incident to his arrest. *See Arizona v. Gant*, 556 U.S. 332, 343 (2009) (concluding that police may search a vehicle incident to arrest when arrestee is unsecured and within reaching distance of the interior of the vehicle or when it is "reasonable to believe that evidence of the offense of arrest might be found in the vehicle").

The district court, in sum, did not err in finding that the physical evidence was lawfully seized.  And it did not abuse its discretion in admitting the evidence at trial.

## B

Second, Mr. Fonseca contends that the district court should have excluded his statements to Agent Brady based on the police's failure to scrupulously honor his invocation of his right to an attorney.  He also argues that the district court should have, post-verdict, granted him a new trial based on its erroneous admission of his statements, including his confession.  He argues that by (1) "not immediately ceasing interrogation upon the defendant's first unambiguous invocation of his right to counsel," and (2) "explaining the federal criminal process to the defendant immediately after he unambiguously invoked his right to an attorney for a second time," Agent Brady violated his rights.  He claims Agent Brady's actions made all of his subsequent statements presumptively involuntary.  Thus, Mr. Fonseca claims the statements he made during the drive to FDC Miami — that the guns and drugs belonged to him — were involuntary and therefore inadmissible.  Mr. Fonseca believes the police should have re-administered his *Miranda* warnings when he

began speaking to ensure he had knowingly and voluntarily waived his right to counsel. [2]

The government, on the other hand, contends that after Mr. Fonseca invoked his right to counsel, no law enforcement officer subjected him to questioning or to the functional equivalent of interrogation at any time.  The government argues that Mr. Fonseca voluntarily and freely made incriminating statements about his ownership of the gun and drugs, and that suppression of these statements was not warranted.  The government maintains that the district court correctly admitted these statements, and that because overwhelming evidence supported the jury's guilty verdicts, the district court did not abuse its discretion in denying Mr. Fonseca's motion for a new trial.

The district court found that Mr. Fonseca's statements, both outside the police station and during transport, were freely and voluntarily made.  The district court made its decision after watching an interrogation video, which showed Mr. Fonseca invoking his right to an attorney, and after evaluating testimony from

---

[2] Mr. Fonseca also mentions, although he does not fully address the argument, that the police choreographed his girlfriend's transport in an effort to elicit a confession or admissions from him.  Because he devotes only one sentence of his brief to this idea, we will not address it further.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("[A]n appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").  In addition, the district court found that uncontroverted testimony established no choreographing by the police.  This factual finding was not clearly erroneous.

Agent Brady about the circumstances, content, and context of the comments made by her and by Mr. Fonseca.  The district court pointed to the fact that Mr. Fonseca was the initiator of both conversations during which he made incriminating statements.  And it noted that, in the interrogation room, questioning ceased when Mr. Fonseca stated to Agent Brady that he wanted to "stop and let his lawyer handle it."  The district court explained that Agent Brady's subsequent description to Mr. Fonseca of the transport, booking, and legal counsel appointment procedures might not be the best practice, but it was not interrogation or the functional equivalent of interrogation, and was not likely to elicit an incriminating response.

Although perhaps police officers should refrain from explaining the criminal justice process immediately after a suspect invokes his *Miranda* rights, *see United States v. Johnson*, 812 F.2d 1329, 1331 (11th Cir. 1986), we find no error in the district court's factual finding that Mr. Fonseca's statements were spontaneous or its conclusion that the statements — made at a later time and in a different location — were made voluntarily.  The district court properly admitted Mr. Fonseca's statements at trial, and did not abuse its discretion in refusing to grant a new trial.

## C

Third, Mr. Fonseca argues that the district court should not have allowed Detective Tillman to testify as an expert because his testimony did not meet the

13

*Daubert* standard or the requirements of Rules 702, 402, 403, or 704(b) of the Federal Rules of Evidence. *See Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 593 (1993). Mr. Fonseca maintains that nothing in Detective Tillman's testimony is beyond the understanding of the average lay person, and therefore there was no reason the jury would need "enlightenment from [someone] having a specialized understanding of the subject." Fed. R. Evid. 702 Adv. Comm. Note.

The government argues that the district court properly performed its "gatekeeping" function in evaluating Detective Tillman's testimony because the testimony was based on his extensive experience in narcotics investigations, and was both relevant and helpful to jury members, who would not know the significance of certain conduct or methods of operation unique to the drug distribution business. Even assuming it was error to admit the testimony, avers the government, the error was harmless due to the extensive evidence supporting Mr. Fonseca's guilt beyond a reasonable doubt, including a loaded AR-15 rifle found where Mr. Fonseca was sitting before his arrest, which had Mr. Fonseca's DNA on it; a black bag filled with an amount of marijuana and cocaine sufficient for trafficking; $891 in cash; six cell phones; empty plastic baggies; and a digital scale.

The district court decided to allow Detective Tillman to testify as an expert about street-level drug trafficking tactics, techniques, and procedures based on his

considerable training and experience as an undercover narcotics police officer and his participation in hundreds of narcotics investigations. This choice was in keeping with our precedent, and did not constitute an abuse of discretion. *See Frazier*, 387 F.3d at 1260 (explaining the district court's gatekeeping function is due considerable deference); *United States v. Garcia*, 447 F.3d 1327, 1335 (11th Cir. 2006) ("The operations of narcotics dealers are a proper subject for expert testimony under Rule 702, and we have recognized the well-established rule that an experienced narcotics agent may testify as an expert to help a jury understand the significance of certain conduct or methods of operation unique to the drug distribution business.") (internal citations and quotations omitted).

## D

Fourth, Mr. Fonseca contends that the district court should have granted his motion in limine preventing any reference to allegations of an attempted armed robbery of the Walgreens because, he says, no evidence supported that suggestion, and because the government's intrinsic and inextricably intertwined arguments about this evidence were improper.[3]

---

[3] In his brief, Mr. Fonseca asserts that the statements made by his girlfriend to the Walgreens manager, and those made by the store manager to the 911 operator, were inadmissible hearsay. Because he offers no support for this one-sentence argument, he has abandoned it. *See Sapuppo*, 739 F.3d at 681.

The government argues that evidence of the Walgreens manager's call to 911 was inextricably intertwined with the charged offenses.  That call was based on information that a man was outside in a blue van with a loaded AR-15, and that he was planning to come inside and shoot the store occupants.  The 911 operator dispatched officers to the scene to investigate a possible armed robbery in progress based on the call.  The government argues that the jury needed to understand the full context of the alleged crime and the police's response in order to properly evaluate the charges against Mr. Fonseca.

The district court decided that evidence of Mr. Fonseca's alleged attempted armed robbery was more probative than prejudicial, and permitted the evidence at trial.  *See* Fed. R. Evid. 403.  The district court found that the references to armed robbery were inextricably intertwined with the charged offenses because the alleged armed robbery was the very reason the police were dispatched to Walgreens in the first place.  *See United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998) ("Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.") (internal quotations omitted).  We find no abuse of discretion in the district court's assessment that references to armed robbery were

vital to an understanding of the context for the police's arrival at the Walgreens, their arrest of Mr. Fonseca, and their subsequent search of Mr. Fonseca's vehicle.

E

Finally, Mr. Fonseca argues that the district court erred in overruling his objection to the grouping of Counts 1 and Count 2 in paragraph 20 of the presentence investigation report.  Mr. Fonseca argues that this grouping constituted impermissible double counting, because he was doubly punished for possessing the gun — what he called "stacking gun-on-gun."[4]  He argues that "[a] legally correct computation would have been [C]ount 2 (possession with intent to distribute a controlled substance) running consecutive to the 5-year statutory minimum mandatory penalty on [C]ount 1 (felon in possession of a firearm and ammunition)."

The government counters that Mr. Fonseca's argument is contrary to the plain meaning of U.S.S.G. § 3D1.3(a).  The government explains that grouping Counts 1 and 2 in order to calculate the advisory Sentencing Guidelines range is not a sentence enhancement, but is merely the process required to determine Mr.

---

[4]  In addition, Mr. Fonseca objects to a two-level firearm enhancement under U.S.S.G § 2K2.1(b)(6)(B).  But the record indicates that the government abandoned the § 2K2.1(b)(6)(B) enhancement before sentencing, and that the district court did not apply that enhancement in calculating Mr. Fonseca's advisory sentencing guidelines range.  *See* D.E. 103 at 4.  Therefore, this argument is moot.

Fonseca's base offense level under § 3D1.2(c).  Thus, the government concludes, Mr. Fonseca is not being punished twice for substantially the same harm.

We have explained that "[i]mpermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." *United States v. Webb*, 665 F.3d 1380, 1382 (11th Cir. 2012) (internal quotations omitted).  Unless the guidelines give specific instructions otherwise, we "presume that the Sentencing Commission intended to apply separate sections cumulatively, and, as a result, a defendant asserting a double counting claim has a tough task."  *Id.*   (internal quotations omitted). Additionally, we recognize that 18 U.S.C. §§ 922(g) and 924(c) are separate statutes with separate and distinct elements.  *See United States v. Gunn*, 369 F.3d 1229, 1234 (11th Cir. 2004).

The grouping provision, § 3D1.3(a), states:

> In the case of counts grouped together pursuant to § 3D1.2(a)–(c), the offense level applicable to a Group is the offense level, determined in accordance with Chapter Two and Parts A, B, and C of Chapter Three, for the most serious of the counts comprising the Group, i.e., the highest offense level of the counts in the Group.

In addition, § 3D1.2(c) specifically calls for the grouping of Counts 1 and 2 because "one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the

18

counts." U.S.S.G. § 3D1.2(c).   The increase in Mr. Fonseca's offense level based upon grouping, therefore, was not erroneous.   *See id.*   For these reasons, Mr. Fonseca's arguments that the district court engaged in double counting and imposed an improper sentence fail.

## V

We affirm Mr. Fonseca's conviction and sentence.

**AFFIRMED.**

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

March 07, 2018

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  16-15521-AA
Case Style:  USA v. Damaso Rivera Fonseca
District Court Docket No:  1:15-cr-20802-DPG-1

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Tonya L. Searcy, AA at (404) 335-6180.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1 Ntc of Issuance of Opinion