FILED BY___*PG*___D.C.

**DEC 3 0 2019**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

DAMASO RIVERA FONSECA,

        Petitioner,

vs.                              Docket No.: 1:15CR20802

UNITED STATES OF AMERICA,

        Respondent.

_____/

**PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO CORRECT VACATE, AND/OR SET-ASIDE CONVICTION AND
SENTENCE PURSUANT TO TITLE 28 U.S.C. § 2255**

### TABLE OF CONTENTS

Table of Contents ................................................................. i

Table of Authorities ............................................................. ii

Summary of the Procedural History ....................................... iv

Allegations of Jurisdication ................................................. 1

Statement as to Cause, Waiver and Prejudice .......................... 2

Statement of the Facts ........................................................ 3

Argument ........................................................................ 6

"The performance of counsel for Fonseca fell below an objective standard of reasonableness during the trial phase ................................... 6

    1. Standard of Review – Ineffectiveness Prong ..................... 6

    2. Standard of Review – Prejudice Prong ............................ 12

In light of *Rehaif v. United States*, both the indictment for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g) and the conviction to that crime are constitutionally invalid ................................. 18

    1. Without the essential mens rea element, Fonseca's indictment failed to charge a crime at all and, after Rehaif, the § 922(g) conviction of this non-crime must be vacated.............................................................. 18

        a. The indictment and notice requirements in light of *Rehaif*............. 19

        b. Fonseca's indictment fails to state a federal crime....................... 20

    2. The Rehaif opinion applies retroactively to cases like Fonseca's on collateral review............................................................................ 23

Trial counsel labored under a conflict of interest since his legal fees were being paid by Newman, who was listed as a government witness during the trial and whose testimony was crucial for the defense .............................. 24

Counsel rendered ineffective assistance when he failed to explain to Fonseca the application of the guidelines, the strength of the government's case and how the guidelines, along with the possibility of an upward variances, would play such an integral part in his final sentence, thus rendering his decision to proceed to trial unknowingly .............................. 29

    1. Fonseca's learning disability required a detailed explanation of the possibilities of resolving the case without a trial .................................. 31

Appellate counsel ineffective for failing to raise on appeal that the District Court abused its discretion when it sentenced Fonseca 60-months above the Presentence Investigation Report's recommendation and the government's recommendation at sentencing ............................................................. 33

The cumulative impact of trial counsels errors addressed herein require an evidentiary hearing ............................................................................. 34

An evidentiary hearing is necessary and would be useful to the court.......... 35

Conclusion ......................................................................................... 36

## TABLE OF AUTHORITIES

*Aguilar-Garcia v. United States,* 517 Fed. Appx. 880  (11th Cir. 2013) ........ 26, 27, 28

*Aron v. United States,* 291 F.3d 708  (11th Cir.2002) .......................................... 28, 29

*Banks v. Reynolds,* 54 F.3d 1508 (10th Cir.  1995) ...................................................... 15

*Bond v. United States,* 1 F.3d 631 (7th Cir. 1994) ......................................................... 2

*Caruso v. Zelinsky,* 689 F.2d 435 (3rd Cir. 1982) ...................................................... 29

*Ciak v. United States,*  59 F.3d 296 (2nd Cir. 1995) ..................................................... 2

*Cuyler v. Sullivan,* 446 U.S. 335 (1980) ................................................................ 25, 27

*Daniel v. Thigpen,* 742 F.Supp. 1535 (M.D. Ala. 1990) .............................................. 15

*Elonis v. United States,* 135 U.S. 2001 (2015) ............................................................. 22

*English v. United States,* 42 F.3d 473  (9th Cir. 1994) .................................................. 2

*Fonseca v. United States,* 139 S. Ct. 846 (2019) ........................................................... 1

*Freeman v. Lane,* 962 F.2d 1252 (7th Cir. 1992) ........................................................ 17

*Grady v. Artuz,* 931 F.Supp. 1048 (S.D.N.Y. 1996) .................................................... 15

*Harris v. Reed,* 894 F.2d 871 (7th Cir. 1990) ............................................................... 9

*Herring v. Secretary, Dept. of Corrections,* 397 F.3d 1338 (11th Cir. 2005) .............. 26

*Hinton v. Alabama,* 571 U.S. 263 (2014) .................................................................... 25

*Holsomback v. White,* 133 F.3d 1382 (11th Cir. 1998) ................................................. 9

*Isabel v. United States,* 980 F.2d 60 (1st Cir. 1992) ............................................. 3, 4, 5

*Jones v. Barnes,* 463 U.S. 745 (1983) .......................................................................... 33

*Kimmelman v. Morrison,* 477 U.S. 365 (1986) ......................................................... 7, 8

*Kokal v. Sec'y, Dep't of Corr.,* 623 F.3d 1331 (11th Cir. 2010) ................................... 25

*Lindhorst v. United States*, 585 F.2d 361(8th Cir. 1978) .......................................... 10

*Lockhart v. Fretwell*, 506 U.S. 364 (1993)....................................................... 13, 14

*Matire v. Wainwright*, 811 F.2d 1430 (11th Cir. 1987) ............................................... 15

*Mayo v. Henderson*, 13 F.3d 528 (2nd Cir. 1994)................................................... 14, 15

*McCorkle v. United States*, 325 Fed. Appx. 804 (11th Cir. 2009) ............................. 26

*McMann v. Richardson*, 397 U.S. 759 (1970) ............................................................ 29

*Mickens v. Taylor*, 535 U.S. 162 (2002)........................................................................ 26

*Nichols v. United States*, 75 F.3d 1137 (7th Cir. 1996)......................................... 33, 36

*Orazio v. Dugger*, 876 F.2d 1508 (11th Cir. 1989)..................................................... 17

*Page v. United States*, 884 F.2d 300 (7th Cir. 1989) ................................................... 33

*Penry v. Lynaugh*, 492 U.S. 302, 330 (1989)................................................................ 23

*Saunders v. United States*, 278 F. App'x. 976 (11th Cir. 2008) ................................ 28

*Shaw v. United States*, 24 F.3d 1040 (8th Cir 1994) .................................................... 36

*Smith v. McCormick*, 914 F.2d 1153 (9th Cir. 1990).................................................... 10

*Smith v. Murray*, 477 U.S. 527 (1986) ......................................................................... 33

*Smith v. United States*, 871 F.Supp. 251 (ED. Va. 1994).......................................... 14

*Stirone v. United States*, 361 U.S. 212 (1960)....................................................... 19, 20

*Stoia v. United States*, 22 F.3d 766 (7th Cir. 1994)................................................. 2, 35

*Strickland v. Washington*, 466 U.S. 668 (1984)................................................... *passim*

*Tapia v. Tansy*, 926 F.2d 1554 (10th Cir.), *cert. denied*, 502 U.S. 835 (1991)........... 33

*Teague v. Lane* 489 U.S. 288 (1989)............................................................................. 23

*United States v Hands*, 184 F.3d 1322 (11th Cir. 1999) ............................................. 34

*United States v. Acklen,* 47 F.3d 739 (5th Cir. 1995) ................................................... 32

*United States v. Blaylock,* 20 F.3d 1458 (9th Cir. 1994) ........................................... 35

*United States v. Briggs,* 939 F2d 222 (5th Cir. 1991) ................................................... 10

*United States v. Burrows,* 872 F.2d 915 (9th Cir. 1989) ....................................... 9, 10

*United States v. Cook,* 45 F.3d 388 (10th Cir. 1995) ................................................... 33

*United States v. Cruikshank,* 92 U.S. 542 (1875) ....................................................... 19

*United States v. Dawson,* 857 F.2d 923 (3rd Cir. 1988) ............................................. 32

*United States v. Day,* 969 F.2d 39 (3rd Cir.1992) ........................................................ 29

*United States v. De La Fuente,* 8 F.3d 1333 (9th Cir. 1993) ......................................... 3

*United States v. Dixon,* 1 F.3d 1080 (10th Cir. 1993) ................................................... 33

*United States v. Estrada,* 849 F.2d 1304 (1st Cir. 1988) .............................................. 10

*United States v. Fernandez,* 145 F.3d 59 (1st Cir. 1998) .............................................. 34

*United States v. Frady,* 456 U.S. 152 (1982) .................................................... 3, 13, 18

*United States v. Galloway,* 56 F.3d 1239 (10th Cir. 1995) ............................................. 3

*United States v. Gayle,* 967 F.2d 483 (11th Cir. 1992) ......................................... 19, 21

*United States v. Giardino,* 797 F.2d 30 (1st Cir. 1986) ............................................... 10

*United States v. Glover,* 121 S.Ct. 692 (2001) ............................................................ 17

*United States v. Hardamon,* 188 F.3d 843 (7th Cir. 1999) ........................................... 2

*United States v. Jackson,* 120 F.3d 1226 (11th Cir. 1997) ................................... 18, 21

*United States v. Loughery,* 908 F.2d 1014 (D.C. Cir. 1990) .......................... 30, 31, 32

*United States v. Mannino,* 212 F.3d 835 (2nd Cir. 2000) ........................................... 16

*United States v. Martinez,* 800 F.3d 1293 (11th Cir. 2015) ........................................ 22

*United States v. McCoy,* 215 F.3d 102 (D.C. Cir. 2000)..........................................29, 30

*United States v. Munoz,* 150 F.3d 401 (5th Cir. 1998) .............................................34

*United States v. Olano,* 507 U.S. 725 (1993) .............................................................12

*United States v. Williamson,* 183 F.3d 458 (5th Cir. 1999).......................................15

*United States v. Witherspoon,* 231 F.3d 923 (7th Cir. 2000).....................................36

*United States,* 995 F.2d 1317 (6th Cir. 1993) .............................................................3

*Virgin Islands v. Weatherwax,* 20 F.3d 572 (3rd Cir. 1994).......................................35

*Wainwright v. Sykes,* 433 U.S. 72 (1977) ....................................................................17

*Welch v. United States,* 136 S. Ct. 1257 (2016)...........................................................24

Williams v. Taylor, 529 U.S. 362 (2000) .....................................................................32

## Regulations

Title 18 U.S.C. § 922(g)...........................................................................................18, 20

Title 18 U.S.C. § 922(g)(1) .............................................................................................1

Title 18 U.S.C. § 924(c)(1)(A).........................................................................................1

Title 18 U.S.C. § 3553.....................................................................................................34

Title 21 U.S.C. § 841(a)(1) ..............................................................................................1

Title 28 USC § 2255 ..........................................................................................1, 10, 35

## Federal Rules

Federal Rule of Criminal Procedure 33 .................................................................12, 13

Comes now Damaso Rivera Fonseca, ("Fonseca") with this memorandum of law in support of the motion to correct and/or set aside conviction and sentence pursuant to Title 28 U.S.C. § 2255 and in support provides as follows:

## SUMMARY OF THE PROCEDURAL HISTORY

Fonseca was charged by a grand jury sitting in the Southern District of Florida in a three-count indictment with, being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) (Count 1); possession with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Count 2); and possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 3). (Dkt. 6). After several days of trial, the jury returned a verdict of guilty as to all counts. (Dkt. 73).

On August 2, 2016, the district court sentenced Fonseca to 235 months of imprisonment, consisting of 115 months on Counts 1 and 2 and 120 months to be served consecutively on Count 3. (DE 88). Fonseca appealed, however, on September 10, 2018, the Eleventh Circuit affirmed the conviction and sentence. *United States v. Fonseca*, 2018 U.S. App. LEXIS 25638 (11th Cir. Sep. 10, 2018). A writ of certiorari was denied on January 7, 2019. *Fonseca v. United States*, 139 S. Ct. 846 (2019). This timely motion to vacate sentence and conviction follows.

## ALLEGATION OF JURISDICTION

This Court has jurisdiction to entertain, rule on the merits, and grant relief under Title 28 U.S.C. § 2255 and the principles of *Strickland v. Washington,* 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984).

## STATEMENT AS TO WAIVER, CAUSE, AND PREJUDICE

Fonseca did not raise claim these claims on direct appeal because the facts set forth in his § 2255 were and are material to the claim of ineffective assistance of counsel, but were not part of the record for direct appeal. "Cause" is therefore established for his failure to raise the claim prior to this motion. *Ciak v. United States,* 59 F.3d 296, 303-304 (2nd Cir. 1995); *Bond v. United States*, 1 F.3d 631 (7th Cir. 1994); *Stoia v. United States*, 22 F.3d 766 (7th Cir. 1994) (prisoner's failure to raise ineffective assistance of counsel claim on direct appeal will result in forfeiture of right to bring § 2255 motion only when claim is based entirely on trial record); *English v. United States*, 42 F.3d 473, 481 (9th Cir. 1994) (holding that section 2255 claims are waived for failure to raise them on direct appeal only if (1) a specific procedural rule required the defendant to raise the issues on direct appeal or (2) the failure to raise the issues was a deliberate bypass of direct review.) Even if the record on appeal is subsequently determined to have been sufficient to raise the instant claims of ineffective assistance of counsel, cause exists for the failure of Fonseca to raise the claims prior to this motion because it reasonably appeared at the time of filing the appeal that new evidence might be necessary to support his claim.

Cause exists for the failure of Fonseca to raise the instant claims of ineffective assistance of counsel in his direct appeal because such claims should not be brought in direct appeal even if the record is or was sufficient to raise the claims. *United States v. Hardamon*, 188 F.3d 843 (7th Cir. 1999); *United States v. Galloway,* 56

F.3d 1239, 1240-43 (10th Cir. 1995) (en banc); *United States v. Tunstall,* 17 F.3d 245, 246 [4] (8th Cir. 1994). Fonseca has properly pleaded "prejudice" by pleading the "fundamental defect" in his sentence, as set forth herein. *Ward v. United States,* 995 F.2d 1317, 1321 (6th Cir. 1993). "Prejudice" to Fonseca, within the meaning of *United States v. Frady,* 456 U.S. 152, (1982), as construed in *United States v. De La Fuente,* 8 F.3d 1333, 1336-37 (9th Cir. 1993) is established by the fact that absent relief by this Court, Fonseca's sentence is in violation of the Constitution and laws of the United States. *Id. See also Isabel v. United States,* 980 F.2d 60, 64 (1st Cir. 1992) ("prejudice" established, for purpose of "procedural bypass question" where § 2255 movant's "sentencing range would be reduced" if successful on claim).

Based on the foregoing, and the absence of any knowing and intelligent waiver by Fonseca of his right to bring this motion, this Court is not precluded by the "cause and prejudice" principle from entertaining, ruling on the merits, and granting the relief requested.

## STATEMENT OF THE FACTS

On October 5, 2015, at approximately 2:44 a.m., the City of Aventura Police Department ("APD") received a 911 call from the manager of a Walgreens store located at 18635 Biscayne Boulevard, in Aventura, Florida. (Dkt. 98 at 229). The manager reported that there was a female (later identified as Fonseca's girlfriend, Bridget Newman) inside of the store who was upset and stating that her boyfriend was outside in the parking lot, in a blue van with an AR-15 rifle, and he was going to come in and kill everyone in the Walgreens. *Id.* In response to the call, APD

3

officers were dispatched to the scene, where they observed a blue van matching the reported description with its engine running that was backed into a well-lit parking space directly in front of the Walgreens entrance. *Id.* at 231-32. The Officers allegedly saw Fonseca moving around in the back of the van, holding what appeared to be a rifle. *Id.* at 234-35; (Dkt. 99 at 8). The Officers ordered Fonseca out of the van where he was taken into custody. (Dkt. 98 at 236-37). When one of the officers initially walked past the van during Fonseca's arrest, they smelled a strong odor of marijuana coming from the van. *Id.* at 240. Also, in the place where Fonseca was sitting, an officer observed what appeared to be the stock of a rifle. *Id.* A loaded AR-15 rifle, with a bullet in the chamber and the gun set to "fire" mode, was observed in plain view through the van's open door. (Dkt. 98 at 242; 99 at 42-43).

The van was searched after Fonseca's arrest. (Dkt. 99 at 32-34). Additionally, per APD police, the van was towed and inventoried because neither Fonseca nor Newman was its registered owners. (Dkt. 97 at 24-26). During the processing and inventorying of the van, law enforcement officers found, among other things, sixty-seven rounds of ammunition, 44 grams of marijuana, 16 grams of cocaine, plastic baggies, a digital measuring scale, hundreds of dollars in cash, a hollowed-out sugar container, and multiple cell phones, all in close proximity to the loaded AR-15 rifle. (Dkt. 99 at 35-38, 40-43, 47-54). After his arrest, the United States Bureau of Alcohol, Tobacco, and Firearms ("ATF") agents interviewed Fonseca. (Dkt. 97 at 63-64). The interview was audio and video recorded. *Id.* at 64. During the interview, Fonseca invoked his right to counsel and the ATF agent ceased all questioning. *Id.*

at 66. Fonseca was told he would be taken to the Federal Detention Center ("FDC"). While being transferred via the sally port, he saw his girlfriend, Newman, sitting in a marked police vehicle. *Id.* at 70-71; (Dkt. 99 at 227). After observing Newman in the police vehicle, Fonseca made several statements regarding the drugs and gun found in his possession. Dkt. 97 at 72,75-76; (Dkt. 99 at 227-28). Fonseca allegedly admitted that the AR-15 rifle and narcotics that were recovered from the blue van belonged to him and that Newman should not face any criminal charges related to the items. (Dkt. 97 at 72; 99 at 227). During the drive from the police station to the FDC, Fonseca allegedly stated that he had the firearm for his protection. (Dkt. 97 at 74; 99 at 228). He further stated that he had many enemies and people who were looking to hurt him and that he preferred to have the firearm with him and be caught by the police than not have the firearm and be killed. (Dkt. 97 at 74).

As previously mentioned, Fonseca proceeded to trial and was convicted of all counts in the indictment. At sentencing, the court upward departed on Fonseca's sentence by 60-months, sentencing Fonseca to 235-months, a variance of 60-months above the requested guideline range of 175 months the government requested.

## ARGUMENT

### I. THE CONVICTION OF DAMASO FONSECA VIOLATIVE OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

#### A. The performance of counsel for Fonseca fell below an objective standard of reasonableness during the trial phase.

##### 1. Standard of Review – Ineffectiveness Prong

In *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984), the Supreme Court established a two-prong test to govern ineffective assistance of counsel claims.  To obtain reversal of a conviction or to vacate a sentence based on ineffective assistance of counsel the defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's objectively unreasonable performance, the result of the proceeding would have been different. *Id.* 466 U.S. at 688-689; *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000). The Court stated that "judicial scrutiny of counsel's performance must be highly deferential" and added that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance". *Id.*  The Court clarified that this reference to "highly deferential scrutiny"[1] referred only to the first or performance prong of the test and meant that,

> "... the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"

*Id.  Strickland v. Washington*, 466 U.S. at 689-691.

---

[1] The Court stated that "factors which may actually have entered into counsel's selection of strategies and ... may thus affect the performance inquiry ... are irrelevant to the prejudice inquiry." *Strickland v., Washington*, 466 U.S. at 695.

The Court added that,

> "... strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make a reasonable and proper decision that makes particular investigations unnecessary." *Id.*

Two years after its *Strickland* decision, the Court reaffirmed that this portion of the decision sets forth what test can be made in evaluating whether counsel was within the range of "reasonable professional assistance", or fell below an objective standard of reasonableness.[2] *Kimmelman v. Morrison*, 477 U.S. 365, 385-387, 91 L.Ed.2d 305, 106 S.Ct. 2574 (1986); *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000).  The Supreme Court noted that "a single, serious error may support a claim of ineffective assistance of counsel." *Id.  Kimmelman v. Morrison,* 477 U.S. at 384.  The Court added that this "single serious error" could cause counsel's performance to fall "below the level of reasonable professional assistance", even where, "counsel's performance at trial was "generally credible enough" and even where counsel had made "vigorous cross-examination, attempts to discredit witnesses, and [an] effort to establish a different version of the facts." *Id.*  477 U.S. at 386.[3]  The government argued, and the Court agreed that the determining factor

---

[2] This presupposes, for the instant argument, that the defendant provided counsel with complete and accurate information and did not place any restrictions on counsel's strategy. *Id. Strickland v Washington*, 466 U.S. at 691.

[3] See also *Murray v. Carrier,* 477 U.S. 478, 496, 91 L.Ed.2d 397, 106 S.Ct. 2639 (1986) ("The right to effective assistance of counsel ... may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial.")

was whether or not counsel's "single serious error" or "failure" was the result of, or attributable to, a trial "strategy." *Id.* 477 U.S. 384-386; *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000).  The Court then found that no "strategy" was involved in that case and that counsel's performance thereby fell below the *Strickland v. Washington* objective standard because counsel's failure was based "on counsel's mistaken beliefs" as to the laws governing discovery. *Id.*  477 U.S. at 385.

The Supreme Court added:

> "Viewing counsel's failure to conduct any discovery from his perspective at the time he decided to forego that stage of pretrial preparation and applying a 'heavy measure of deference', *ibId.* , to his judgment, we find counsel's decision unreasonable, that is, contrary to prevailing professional norms. The justification Morrison's attorney offered for his omission betray a startling ignorance of the law--or a weak attempt to shift blame for inadequate preparation. 'Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' *Id.* Respondent's lawyer neither investigated nor made a reasonable decision not to investigate the State's case through discovery."

*Id. Kimmelman v. Morrison*, 477 U.S. at 385.

In other words, the Court determined that counsel's omissions were not part of any "strategy" or trial tactic because they had not been taken after a thorough investigation of the law and facts relevant to all plausible options available to counsel.  From this, the Court determined that the omissions were professionally unreasonable and had caused counsel's performance to fall below the objective standard of *Strickland. Kimmelman v. Morrison*, 477 U.S. at 385-387; *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000).  In short, no deference is due to counsel's actions, and the performance of counsel falls below the *Strickland*

8

objective standard of reasonableness[4] if counsel's specific acts or omissions are not demonstrably[5] the result of actual strategic choices made between or among all plausible options "after thorough investigation of law and facts relevant to all possible options." *Strickland,* 466 U.S. at 691; *Kimmelman v. Morrison*, 477 U.S. at 385-387; *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (4-18-00).[6]

Where a convicted defendant is making a claim of ineffective assistance of counsel, the defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.*

---

[4] For purposes of this portion of the *Strickland* analysis, the Court presumes that counsel's failures were at least potentially prejudicial to the defendant. *Kimmelman v. Morrison*, 477 U.S. at 365, 387, 390-91.

[5] *See United States v. Burrows*, 872 F.2d 915, 918-919 (9th Cir. 1989) (record must "conclusively" demonstrate strategic nature of counsel's actions); *Harris v. Reed*, 894 F.2d 871, 878 (7th Cir. 1990) (reviewing court should "not construct strategic defenses which counsel does not offer") (*citing Kimmelman v. Morrison*, 477 U.S. at 386); *Moffet v. Kolb*, 930 F.2d 1156, 1160-61(7th Cir. 1991) (counsel's unexplained failure to use available police report, to impeach prosecution witness's statements and support theory of defense, below objective standard of *Strickland*); *United States v. Acklen*, 47 F.3d 739, 743-44 (5th Cir. 1995) (remanding for evidentiary hearing where there was nothing in record to indicate counsel's failures were attributable to strategic choice among all plausible alternatives available for defense); *United States v. Dawson,* 857 F.2d 923, 929 (3rd Cir. 1988) (absent evidence in the record, "this court will not speculate on trial counsel's motives"); *Nichols v. United States*, 75 F.3d 1137 (7th Cir. 1996).

[6] The courts have decided that counsel's failure to consider or investigate laws and facts relevant to potentially viable defenses cannot be said to be the result of reasonable professional judgment, nor can it be termed "strategic" or "tactical' or "objectively reasonable", because "counsel can hardly be said to have made a strategic choice against pursuing a certain line of investigation when he has not yet obtained the facts on which such, a decision could be made." *Gray, supra*, 878 F.2d at 711 (citing *Strickland*, 466 U.S. at 690-91); *Holsomback v. White*, 133 F.3d 1382 (11th Cir. 1998) (same); *Nichols v. United States*, 75 F.3d 1137 (7th Cir. 1996).

*Strickland v. Washington*, 466 U.S. at 690.  If the record does not "conclusively" demonstrate "strategic reasons" for counsel's failures, the district court entertaining a motion under 28 USC § 2255 must hold an evidentiary hearing. [7] *A subsequent affidavit from counsel will not suffice to establish a trial strategy, nor absolve the district court from the requirement of holding an evidentiary hearing.* [8]

In the instant case, Fonseca has made specific, sworn, factual allegations which this Court should accept as true for the purpose of considering whether to hold an evidentiary hearing because they are not conclusively disproved by the files and records of this case.

The allegations of Fonseca as to the "performance" of counsel include the following:

### CLAIM ONE

1.   Fonseca was represented by attorney Christopher DeCoste during the criminal trial and sentencing.  Attorney Mark Katzef ("Katzef") addressed the direct appeal.

---

[7] *See United States v. Burrows*, 872 F.2d 915, 918-919 (9th Cir. 1989); *United States v. Briggs*, 939 F2d 222, 228 (5th Cir. 1991); *United States v. Estrada*, 849 F.2d 1304, 1306-1307 (1st Cir. 1988) and *Virgin Islands v. Weatherwax*, 20 F.3d 572, 573 (3rd Cir, 1994); *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994) (petitioner entitled to evidentiary hearing on claim of ineffective assistance of counsel unless claim inadequate on its face or if records conclusively refute factual assertions of claim); *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (evidentiary hearing required unless § 2255 motion, files, and trial record "conclusively show" petitioner entitled to no relief) and *Nichols v. United States*, 75 F.3d 1137 (7th Cir. 1996) (same).

[8] *See Smith v. McCormick*, 914 F.2d 1153, 1170 (9th Cir. 1990) and *United States v. Giardino*, 797 F.2d 30, 32 (1st Cir. 1986) and *Lindhorst v. United States*, 585 F.2d 361, 365 (8th Cir. 1978).

2.   DeCoste was retained and paid all fees by Bridget Newman ("Newman"). (See Exhibit A).

3.   After Newman retained DeCoste, it was decided that Newman would testify for the defense and be called as a witness to establish that the firearm that was attributed to Fonseca, was in her possession not Fonseca's on the date of the incident. (See Exhibit A).

4.   At no time, did DeCoste ever explain that there was conflict with having an accuser, Newman, pay the legal fees for Fonseca. (See Exhibit A).

5.   Had DeCoste explained the possibility of a conflict, Fonseca would have never retained him for the representation. (See Exhibit A).

6.   During pre-trial preparation, there was never any explanation of the strength of the government's case, the extensive evidence that the government had, nor the possibility that Fonseca could receive such an elevated sentence as he received. (See Exhibit A).

7.   Had there been an explanation of the extensiveness of the evidence, the guidelines and all possible upward departures, Fonseca would have never proceeded to trial, would have pled guilty and would have mitigated his overall sentence.

8.   After sentencing, Katzef was appointed for the appeal.

9.   Katzef was explicitly told that Fonseca wanted to appeal the upward departure at sentencing. (See Exhibit A).

10. The upward departure was preserved for appeal as the main issue to address on appeal, however, Katzef failed to address the issue on appeal, even after Fonseca advised him several times. (See Exhibit A).

11. Fonseca eventually had to submit his own brief to the appellate court raising the issue, with limited resources, without success.

12. Counsel's omissions as set forth in ¶'s 3-11were not the result of reasoned decisions based on strategic or tactical choices made among all plausible options available to counsel for the defense of Fonseca.

13. Counsel's omissions set forth in ¶'s 3-11 were not the result of counsel's *abdication* of the duty and responsibility to advocate Fonseca' case during the trial and appellate phases.

## 2. Standard of Review – Prejudice Prong

In writing for the majority in *Strickland v. Washington*, 466 U. S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984), Justice O'Connor stated the general rule that actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Id.* 466 U.S. at 693, 80 L.Ed.2d at 697. More specifically, Justice O'Connor set forth the now well-known statement of the test for "prejudice" in claims of actual ineffectiveness of counsel as:

> "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Id.* 466 U.S. at 695, 80 L.Ed.2d at 698.

While the Court noted the government's, perhaps natural, inclination to argue that attorney error is harmless unless the defendant can show that "counsel's deficient conduct more likely than not altered the outcome of the case", [9] the Court specifically and explicitly rejected this argument by the government.

In rejecting any outcome determinative test such as that employed in Federal Rule of Criminal Procedure 33 analysis, the Court stated:

> The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of

---

[9] This, of course, means that the 'plain error" standard also does not apply to ineffective assistance of counsel claims. *Id. See United States v. Olano*, 507 U.S. 725, 735 (1993) (plain error "must be real and such that it probably influenced the verdict.")

12

the evidence to have determined the outcome. *Id. Strickland v. Washington,* 466 U.S. at 694; *Williams Taylor,* 120 S. Ct. 1495, 1519, (2000).[10]

The Court further specifically rejected the application of the "actual prejudice" standard of *United States v. Frady,* 456 U.S. 152, 71 L.Ed.2d 816, 102 S.Ct. 1584 (1982), to claims of ineffective assistance of counsel, with the following admonishment:

> "The principles governing ineffectiveness claims should apply in federal collateral proceedings as they do on direct appeal or in motions for a new trial. As indicated by the 'cause and prejudice' test for overcoming procedural waivers of claims of error, the presumption that a criminal judgment is final is at its strongest in collateral attacks on that judgment. *See United States v. Frady,* 456 U.S. 152, 162-169, 71 L.Ed.2d 816, 102 S.Ct. 1558 (1982). An ineffectiveness claim, however, as our articulation of the standards that govern the decision of such claims makes clear, is an attack on the fundamental fairness of the proceedings whose result is challenged. Since fundamental fairness is the central concern of the writ of habeas corpus, *see Id.* at 126, no special standards ought to apply to ineffectiveness claims made in habeas proceedings."

*Id. Strickland,* 466 U.S. at 697-98, 80 L.Ed.2d at 700.[11]

---

[10] *See also United States v. Day,* 969 F.2d 39, 45 and [n.3] (3rd Cir. 1992); *United States v. Loghery,* 908 F.2d 1014, 1018-1020 (D.C. Cir. 1990). While some Courts have held that *Lockhart v. Fretwell,* 506 U.S. 364, 373, 122 L.Ed.2d 180, 189, 113 S.Ct. 838 (1993) modified *Strickland* "to require a separate inquiry into fundamental fairness even when [Petitioner] is able to show that his lawyer was ineffective and that his ineffectiveness probably affected the outcome of the proceeding", *Williams v. Taylor,* 120 S. Ct, 1495, 1512-16, 146 L. Ed. 2d 389 (2000), this construction of *Lockhart v. Fretwell,* was specifically addressed and rejected by the Supreme Court in *Williams v. Taylor.* The Supreme Court's holding in *Lockhart v. Fretwell,* was limited to circumstances where the "different outcome" would be contrary to the law. *Id.* As Justice O'Connor carefully pointed out in *Lockhart v. Fretwell,*:

> "... today's decision will, in the vast majority of cases, have no effect on the prejudice inquiry under *Strickland.* The determinative question - whether there is 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different' ... remains unchanged," *Id.* 506 U.S. at 373 (O'Connor) (concurring).

The Court hearing an ineffectiveness claim should consider the totality of the factors which guided the decision-maker in the challenged proceeding, then try to determine which factors were or were not "affected" by counsel's errors.

> "Taking the unaffected [factors] as a given, and taking due account of the effect of the errors on the remaining [factors] a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."

*Id. Strickland v. Washington,* 466 U.S. at 696, 80 L.Ed2d at 699.

Where through "hindsight"[12] the Court can determine that, but for the errors of counsel, there is a "reasonable probability" of a different outcome, a probability sufficient to "undermine confidence" in the challenged proceedings, the defendant has affirmatively proven prejudice. *Strickland,* 466 U.S. at 694-95*; United States v. Glover,* 121 S.Ct. 696 (2001); *Williams v Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000).[13]

---

[11] *See Kimmelman v. Morrison*, 477 U.S. at 375, 393 and [n.1] (demonstration of "a reasonable probability" that the verdict would have been different constitutes "actual prejudice" in claims of actual ineffective assistance of counsel); *Oshorn v. Shillinger*, 861 F.2d 612, 626 and [n.13] (10th Cir. 1988) (same); *Smith v. United States*, 871 F.Supp. 251, 255 (ED. Va. 1994) (same).

[12]*Lockhart v. Fretwell*, 122 L.Ed.2d at 189-91; *Mayo v. Henderson,* 13 F.3d 528, 534 (2nd Cir. 1994) (prejudice determination, unlike performance determination, may be made with benefit of hindsight").

[13] In *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (4-18-00), the Supreme Court recently, explicitly, rejected the theory that *Lockhart v. Fretwell,* 506 U.S. 364, 373, 122 L.Ed.2d 180, 189, 113 S.Ct. 838 (1993) somehow modified *Strickland* "to require a separate inquiry into fundamental fairness even when [petitioner] is able to show that his lawyer was ineffective and that his ineffectiveness probably affected the outcome of the proceeding." *Williams v. Taylor*, 120 S.Ct. 1495, 1512-116, 146 L.Ed.2d 339 (4-18-00). This construction of *Lockhart v. Fretwell,* was specifically addressed and rejected by the Supreme Court in

14

This rule is applicable to find "prejudice" where hindsight demonstrates that counsel's constitutionally deficient performance deprived a federal criminal defendant of consideration for a favorable adjustment or downward departure under the United States Sentencing Guidelines. *United States v. Glover*, 121 S.Ct. 696 (2001)(rejecting Court of Appeals' rule that only a 'substantial' change in the application of sentencing guidelines constituted "prejudice" within the meaning of *Strickland*). The *Strickland* test for "prejudice" is applicable to cases where a criminal defendant is challenging his conviction or sentence due to actual ineffective assistance of counsel, in the prosecution of his direct appeal, *Banks v. Reynolds*, 54 F.3d 1508 (10th Cir. 1995),[14] with the caveat that "prejudice" in this type of case is limited to the "outcome" of the direct appeal. It does not require the defendant to demonstrate that he would be "successful on remand"; only that there is a *reasonable probability* that he would have had his conviction and/or sentence vacated and/or remanded to the lower court. *United States v. Mannino*, 212 F.3d

---

*Williams v. Taylor*. The Supreme Court's holding in *Lockhart v. Fretwell*, was limited to circumstances where a "different outcome" would be contrary to the law. *Id. See also: Mays v. Gibson*, (10th Cir. 2000) (citing *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000)); *Jackson v. Calderon*, 2000 US App. LEXIS 9049 (9th Cir. 5-8-2000) (same).

[14] *See also United States v. Williamson,* 183 F.3d 458, 462 (5th Cir. 1999) (holding that counsel was deficient because he did not "keep abreast of legal developments related to [Petitioner's] case" which would have revealed a solid and meritorious appellate issue); *United States v. Mannino*, 212 F.3d 835; 2000 U.S. App. LEXIS 10382 (2nd Cir. 2000); *Mayo v Henderson*, 13 F.3d 528 (2nd Cir. 1994); *Freeman v. Lane*, 962 F.2d 1252 (7th Cir. 1992); *Orazio v. Dugger*, 876 F.2d 1508 (11th Cir. 1989); *Matire v. Wainwright*, 811 F.2d 1430 (11th Cir. 1987); *Grady v. Artuz*, 931 F.Supp. 1048 (S.D.N.Y. 1996); *Daniel v. Thigpen*, 742 F.Supp. 1535 (M.D. Ala. 1990)

835 (2nd Cir. 2000).  Specifically, Fonseca has made specific, sworn, factual

allegations, in his § 2255 petition that he was prejudiced by the objectively

unreasonable performance of counsel in the pre-trial and sentencing phases of his

case.

The allegations of Fonseca as to prejudice are as follows:

14. DeCoste never explained that he would not call Newman as a witness since he had to divulge that Newman was paying for Fonseca's legal fees and would have created a conflict of interest. (See Exhibit A).

15. Had DeCoste explained that due to his conflict of interest he would not utilize Newman as a defense witness, Fonseca would have never retained him. (See Exhibit A).

16. DeCoste's loyalty was not towards Fonseca, but towards Newman (the main person that initiated this matter), since he was being paid by Newman to represent Fonseca.  (See Exhibit A).

17. Newman, who was listed as a government witness, was facing criminal charges of her own, so DeCoste never had intentions of calling her for the defense, although he misled Fonseca to this fact.

18. Had DeCoste explained the strength of the government's case, Fonseca would not have proceeded to trial and have accepted a plea offer and mitigated his overall sentence. (See Exhibit A).

19. DeCoste never explained the strength of the government's case, the application of the guidelines and upward departures and the possibility that such an extensive sentence could have been imposed if he proceeded to trial. (See Exhibit A).

20. The lack of explanation by DeCoste was prejudicial to Fonseca on his decision to proceed to trial versus mitigate his sentence by pleading guilty.

21. But for counsel's failure to prepare for Fonseca case there is a  reasonable probability that Fonseca would have received a substantially lower sentence.

22. Fonseca relied completely and in all material respects on the advice of counsel and counsel's failure to explain and be truthful with Fonseca, was detrimental to his defense.

23. Fonseca restates, re-pleads, and re-alleges the facts, pleadings and allegations set forth in ¶¶'s 3-22 presented herein.

24. Counsel's omissions set forth in ¶¶'s 3-22 where based on an incomplete investigation into the law relevant to Fonseca's case and cause.

25. Counsel's omissions as set forth in ¶¶'s 3-22 were the result of counsel's *abdication* of the duty and responsibility to advocate Fonseca's case and cause during the pre-trial, trial, and appellate phases.

26. Fonseca was prejudiced from the unprofessional omissions of counsel, set-forth in ¶¶'s 3-22 because absent said omissions, there is a reasonable probability that the outcome of the case and/or sentencing would have been different. More specifically, but for counsel's unprofessional omissions there is a reasonable probability that Fonseca would have been sentenced to a substantially lower sentence.

27. Fonseca was prejudiced from the unprofessional omissions of counsel set forth in ¶¶'s 3-22 because said omissions undermine confidence in the reliability of the pre-trial, trial appellate phases.

Based on the foregoing facts and law, Fonseca has affirmatively pleaded "prejudice" in his case within the meaning of *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984) and *United States v. Glover*, 121 S.Ct. 692 (2001); *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (4-18-00); *Freeman v. Lane,* 962 F.2d 1252 (7th Cir. 1992) and *Orazio v. Dugger*, 876 F.2d 1508, 1513-14 (11th Cir. 1989).  This meritorious claim of ineffective assistance of counsel constitutes both an independent ground for relief and constitutes "cause" allowing the Court to reach the merits of Fonseca's claim of violation of his rights under the Sixth Amendment.  *Freeman v. Lane*, 962 F.2d 1252 (7th Cir. 1992) (the "failure of appellate counsel to preserve on direct appeal, matters that will be deemed meritorious on collateral review constitutes cause" under the analysis of *Wainwright v. Sykes*, 433 U.S. 72, 87, 53 L.Ed 2d 594, 97 S.Ct. 2497 (1977) and

17

*United States v. Frady*, 456 U.S. 152, 167-68, 170 (1982)) (*citing Orazio v. Dugger*, 876 F.2d 1508, 1513-14 (11th Cir. 1989).

**B. In light of *Rehaif v. United States*, both the indictment for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g) and the conviction to that crime are constitutionally invalid.**

In *Rehaif v. United States*, 2019 U.S. Lexis 4199 (2019) the Supreme Court overruled precedent from the Eleventh Circuit — and every other circuit to have spoken on the issue — about the scope of the crime defined in § 922(g). Before *Rehaif*, the government secured a felon-in-possession conviction by proving merely that the defendant knowingly possessed a firearm and that a court had earlier convicted him of a felony, defined under the statute as a crime punishable by more than one year in prison. *See, United States v. Jackson*, 120 F.3d 1226, 1229 (11th Cir. 1997). But the Supreme Court proclaimed in *Rehaif* that the government "must show that the defendant knew he possessed the firearm and also that *he knew he had the relevant status* when he possessed it." 139 S. Ct. 2191, 2194 (2019) (emphasis added). Because Fonseca's indictment made no mention of this knowledge-of-status element and the governing statute, the conviction violates the Fifth Amendment's indictment clause. That is not all. Fonseca's jury instructions, which also omitted this element, was in error, so the conviction violates his Fifth Amendment right to due process of law and Sixth Amendment rights.

**1. Without the essential *mens rea* element, Fonseca's indictment failed to charge a crime at all and, after *Rehaif,* the § 922(g) conviction of this non-crime must be vacated.**

In *Rehaif*, the Supreme Court clarified that the term "knowingly" in 18

U.S.C. § 924(a)(2) applies not only to the possession element in § 922(g), but also to that statute's status element. Without this knowledge-of-status element, then, Fonseca's indictment failed to charge a crime at all. After *Rehaif*, this Court must vacate Fonseca's § 922(g) conviction and sentence.

### a. The indictment and notice requirements in light of *Rehaif*.

"A criminal conviction will not be upheld if the indictment upon which it is based does not set forth the essential elements of the offense." *United States v. Gayle*, 967 F.2d 483, 485 (11th Cir. 1992) (en banc). The rule serves two purposes: First, "it informs the defendant of the nature and cause of the accusation as required by the Sixth Amendment."[15] Second, the rule "fulfills the Fifth Amendment's indictment requirement, ensuring that a grand jury only returns an indictment when it finds probable cause to support all the necessary elements of the crime." *Gayle*, 967 F.2d at 485. The purpose of that requirement "is to limit [a defendant's] jeopardy to offenses charged by a group of his fellow citizens acting independently of either the prosecuting attorney or judge." *Stirone v. United States*, 361 U.S. 212, 218 (1960). Under § 922(g), nine categories of persons are prohibited from possessing a firearm or ammunition. But while § 922(g)(1), for example, prohibits felons from possessing a firearm, that provision alone does not criminalize such conduct. Rather, that work is done by § 924(a)(2), which declares that a person who "knowingly violates" § 922(g) "shall be . . . imprisoned not more

---

[15] *Id.* The notice "furnish[es] the accused with such a description of the charge against him as will enable him to make his defense," and to enlist the protections of the double jeopardy clause, if necessary. *United States v. Cruikshank*, 92 U.S. 542, 558 (1875).

19

In *Rehaif*, again, the Supreme Court held that the term "knowingly" set forth in § 924(a)(2) applies to both the possession and status elements of § 922(g). *Id.* 139 S. Ct. at 2200. The Court relied upon the "longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding each of the statutory elements that criminalize otherwise innocent conduct." *Id.* at 2195. The statutory text demanded this outcome: "[T]he term 'knowingly' in § 924(a)(2) modifies the verb 'violates' and its direct object, which in this case is § 922(g)." *Id.* at 2195-2196. The Court saw "no basis to interpret 'knowingly' as applying to the second § 922(g) element [on possession] but not the first [on status]. To the contrary, we think that by specifying that a defendant may be convicted only if he 'knowingly violates' § 922(g), Congress intended to require the Government to establish that the defendant knew he violated the material elements of § 922(g)." *Rehaif*, 139 S. Ct. at 2196. Those "material elements" include not only the prohibited conduct (the firearm possession itself) but also the prohibited status that makes the possession illegal. *Id.* Through *Rehaif,* the Supreme Court clarified, that there is no prosecutable, stand-alone violation of § 922(g). Instead, a valid "prosecution" under United States law must be "under [both] 18 U.S.C. § 922(g) and § 924(a)(2)." *Id.* at 2200. The pair of statutes work in tandem to define the crime. In the absence of one, there is no federal crime.

### b. Fonseca's indictment fails to state a federal crime.

The indictment did not allege that Fonseca, at the time he possessed the

firearm, knew that he was a convicted felon.  This should be no surprise because, at the time of the indictment, the law in this circuit provided that no § 922(g) indictment needed to aver the defendant's knowledge of his prohibited status. *Jackson*, 120 F.3d at 1229 (holding that "the government need not prove that the defendant knew of his prohibited status").  But the fact remains that, after *Rehaif*, the indictment failed to describe an essential element of the offense and, indeed, it did not state an offense at all.  So where does this leave us?  "A criminal conviction will not be upheld if the indictment upon which it is based does not set forth the essential elements of the offense." *Gayle,* 967 F.2d at 485.  The absent knowledge-of-status language dooms the indictment.   That is not the only problem with the indictment.  It also failed to cite the proper statutes defining the crime. The indictment named "Section 922(g)(1)," but said nothing at all of § 924(a)(2).  Yet the offense depends on both § 922(g) (which prohibits the possession of firearms and ammunition by certain persons) and § 924(a)(2) (which criminalizes the "knowingly violation" of that prohibition).  In short, the grand jury both failed to charge an essential element— knowledge of status—and failed to cite the key provision naming the applicable *mens rea* and criminalizing that otherwise-innocent conduct.  The government (and, by proxy, this Court) carried forward the flaw by defining the crime to Fonseca at his trial in just the same way.

What shall a Court do when faced with an indictment that once seemed adequate, but in light of a Supreme Court, clarification is missing a *mens rea*

element?  In *United States v. Martinez*, 800 F.3d 1293 (11th Cir. 2015) a panel of the Court faced the same query.  There the indictment charged the defendant with, and he was later convicted of, knowingly transmitting an interstate threat in violation of 18 U.S.C. § 875(c). *Martinez*, 800 F.3d at 1294.  Later, in *Elonis v. United States*, 135 U.S. 2001, 2013 (2015) the Supreme Court held that § 875(c) requires proof of the defendant's subjective intent and, in so doing, the Supreme Court abrogated the Court's precedent. *Id.* 135 U.S. 2001, 2013 (2015).  Following *Elonis*, the *Martinez* panel held that the indictment was insufficient because it "fail[ed] to allege *Martinez's mens rea* or facts from which her intent can be inferred." *Martinez*, 800 F.3d at 1295.   The indictment did "not meet the Fifth Amendment requirement that the grand jury find probable  cause for each of the elements of a violation of § 875(c)." *Id.* The panel vacated the conviction and sentence and ordered the indictment dismissed without prejudice. *Id.*

Here, as in *Martinez,* a Supreme Court decision has abrogated the Eleventh Circuit's precedent in the very same way. The indictment here, like the one in *Martinez,* failed to charge a complete - and, therefore, any - federal crime. Without the requisite *mens rea* and statutory citations required by Rehaif, Fonseca has been convicted of a non-crime. The indictment is insufficient on its face in violation of the Fifth and Sixth Amendments, so this Court should craft the same remedy as the *Martinez* panel—it should vacate Fonseca's § 922(g) conviction.

### 2.   The *Rehaif* opinion applies retroactively to cases like Fonseca's on collateral review.

A prisoner filing his first § 2255 motion is entitled to relief if he establishes that his sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, so long as that motion is not untimely or otherwise procedurally barred. Several years before the AEDPA, the Supreme Court built the modern retroactivity scaffold in *Teague v. Lane* 489 U.S. 288 (1989).  The *Teague* doctrine demands that, with two exceptions, a prisoner may not seek to enforce a new rule of law in a post-conviction proceeding after his conviction is final. *Id* at 310. One of the two exceptions,  however, permits retroactive application of new rules that "place[ ] certain kinds  of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," including "rules forbidding criminal punishment  of certain primary conduct [and] . . . rules prohibiting a certain category of  punishment for a class of defendants because of their status or offense." *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989).  The general *Teague* prohibition is inapplicable to "substantive rules[,] [which] generally apply retroactively." *Summerlin*, 542 U.S. at 351, 352 n.4 (highlighting *Teague's* first exception to non-retroactivity.)  But what is a "substantive" rule? "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons the law punishes."  *Id.* at 353 ("In contrast, rules that regulate only the manner of determining the defendant's culpability are procedural.")  Finally, a rule that narrows the scope of a criminal statute by interpreting its terms is

23

substantive and applies retroactively. *Bousley,* 523 U.S. at 620-21. The new *Rehaif* rule is a substantive rule. The Supreme Court narrowed the scope of § 922(g) by proclaiming that a person violates the law not simply because he is a convicted felon, but because he knows he is a convicted felon. With this new boundary in place, fewer defendants can be said to have committed the crime. *Rehaif* reduces the class of eligible people and shrinks the scope of eligible conduct—it "alters the range of conduct [and] the class of persons the law punishes." *Welch v. United States*, 136 S. Ct. 1257, 1264-65, 1268 (2016) (holding that *Johnson*, the ACCA residual clause, is a "substantive rule that has retroactive effect in cases on collateral review.") Therefore, the *Rehaif* rule is retroactive.[16] As such, this Court must agree that Fonseca's conviction for the § 922(g) offense and sentence, must be set aside.

### C. Trial counsel labored under a conflict of interest since his legal fees were being paid by Newman, who was listed as a government witness during the trial and whose testimony was crucial for the defense.

The legal standard for ineffective assistance of counsel claims in a habeas proceeding is well established. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both that (1) counsel's performance

---

[16] The Eleventh Circuit's order in *In re Palacios* does not say otherwise because it answered a different query. 931 F.3d 1314, 1315 (11th Cir. 2019). There the panel denied an application to file a second or successive § 2255 motion because *Rehaif* does not announce a new rule of constitutional law made retroactive by the Supreme Court itself, as required by § 2255(h). *Id.* Instead, *Rehaif* announced a new rule of statutory law. *Id.* And in a concurrence, Judge Rosenbaum studied *Teague* and *Bousley* and declared that Supreme Court precedent "demand[s] the conclusion that *Rehaif* announced a new rule of substantive law that is necessarily retroactively applicable under *Teague.*" *Id.* at 1917 (Rosenbaum, J., concurring).

was deficient because it fell below an objective standard of reasonableness and (2) prejudice resulted because there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. See *Hinton v. Alabama*, 571 U.S. 263, 272-73, 134 S. Ct. 1081, 188 L. Ed. 2d 1 (2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) and *Padilla v. Ky.*, 559 U.S. 356, 366, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010)). "Because a petitioner's failure to show either deficient performance or prejudice is fatal to a *Strickland* claim, a court need not address both *Strickland* prongs if the petitioner fails to satisfy either of them." *Kokal v. Sec'y, Dep't of Corr.*, 623 F.3d 1331, 1344 (11th Cir. 2010) (citations omitted).  "To succeed on an ineffective-assistance claim based on a conflict of interest, Fonseca must show specific instances in the record that demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Caderno v. United States*, 256 F.3d 1213, 1218 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980); *United States v. Marrera*, 768 F.2d 201, 208) (7th Cir. 1985)). "[T]he possibility of conflict is insufficient to impugn a criminal conviction." *Cuyler*, 446 U.S. at 350. *Otano v. United States*, 2019 U.S. Dist. LEXIS 9898, at *22 (M.D. Fla. Jan. 22, 2019).

The Supreme Court has modified the standard for claims of ineffective assistance of counsel that arise from a conflict of interest. In *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980) the Court held that to establish a Sixth Amendment violation under these circumstances, the petitioner

"must establish that an actual conflict of interest adversely affected his lawyer's performance." The Supreme Court later clarified the *Sullivan* standard in *Mickens v. Taylor*, 535 U.S. 162, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002), in this way:

> [T]he Sullivan standard is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect. An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance.

*Mickens,* 535 U.S. at 172 n.5. Thus, to establish a constitutional violation under *Sullivan*, a criminal defendant must demonstrate that his attorney had an actual conflict, meaning (1) a conflict of interest that (2) adversely affected his lawyer's performance. See *Herring v. Secretary, Dept. of Corrections*, 397 F.3d 1338, 1357 (11th Cir. 2005) (recognizing that in *Mickens*, the Supreme Court "rephrased the analysis somewhat and stated an 'actual conflict' is what a defendant must establish under *Cuyler* to prove a Sixth Amendment violation."). *Ochoa-Vasquez v. United States*, 2016 U.S. Dist. LEXIS 172172, at *15-16 (S.D. Fla. Dec. 9, 2016).

A conflict of interest exists when an attorney has "inconsistent interests." *Aguilar-Garcia v. United States*, 517 Fed. Appx. 880, 882 (11th Cir. 2013). The inquiry is "fact-specific," *Id.* , and the conflict "cannot be merely possible, speculative or hypothetical." *McCorkle v. United States*, 325 Fed. Appx. 804, 808 (11th Cir. 2009). It is not enough for a petitioner to make conclusory allegations of a conflict of interest; rather, proof of "specific instances of inconsistent interests or specific impairment of [p]etitioner's interests" is required. *Jean v. United States*, No. 2011 U.S. Dist. LEXIS 140271 (S.D. Fla. Dec. 5, 2011).

26

To establish an adverse effect, the petitioner must prove three elements: (1) that his attorney "could have pursued a plausible alternative strategy," (2) "that this alternative was reasonable" and (3) that his attorney did not follow the alternative strategy "because it conflicted with the attorney's external loyalties." *Aguilar-Garcia*, 517 Fed. Appx. at 882 (citation omitted). Unlike the standard under *Stickland* which requires proof of actual prejudice, "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Sullivan*, 446 U.S. at 349-50.

When Fonseca made his first appearance, he was assigned Ian McDonald from the Public Defender's office to represent him. Shortly thereafter, DeCoste filed a notice of appearance and assumed responsibility of the case once Newman, the government's witness that began the complete investigation, retained DeCoste to represent Fonseca and paid all his fees. Here the allegation supported by Fonseca's sworn affidavit warrants a hearing. Fonseca presented in his sworn affidavit that attorney DeCoste received all payments (not just a partial payment), of his legal services from Newman. Newman was critical for the government (in fact was listed as a witness), Dkt. 103 at 27 since she was the initial person that entered the Walgreens making the complaints that Fonseca was about to enter and "shoot everyone inside." In fact, Newman was the owner of the firearm and the contraband located in the vehicle and was on standby to testify for the defense on these facts, however, never called by DeCoste. (Exhibit A) DeCoste's financial interest (divulging that Newman was the source of his legal fees), overrode the

27

decision to call Newman for Fonseca's defense.  DeCoste violated the three elements presented in *Aguilar-Garcia*, 517 Fed. Appx. at 882 "(1) that his attorney "could have pursued a plausible alternative strategy," (2) "that this alternative was reasonable" and (3) that his attorney did not follow the alternative strategy "because it conflicted with the attorney's external loyalties." *Id.*  (1) - Newman could have been called (and was ready to testify) that she was the owner who possessed the firearm, (not Fonseca), (2) DeCoste did not follow the agreed strategy since he would have to divulge that Newman was the source of his payments and (3) the "external loyalty" to Newman (due to the source of his funds), conflicted with Fonseca' trial defense.  This allegation of conflict requires a hearing under well settled-law.   The payments by Newman to DeCoste are not part of the record of this case. Neither is the agreement between DeCoste and Newman over the agreement for Fonseca's representation.  All trial defenses between Fonseca, DeCoste and Newman were discussed off the record and are not part of the "records and files of the case." *Shaw* at 1043, *Blaylock* at 1465.  Since Fonseca's affidavit is uncontested, the court must hold an evidentiary hearing to address the uncontested facts.

All Fonseca has to establish to be granted an evidentiary is to allege-*not prove*-reasonably specific, non-conclusory facts that, if true, would entitle him to relief." See, *Aron v. United States,* 291 F.3d 708, 714 n. 5 (11th Cir.2002);  *Saunders v. United States*, 278 F. App'x. 976, 978 (11th Cir. 2008) ("[I]f the petitioner alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim." *Aron*, 291 F.3d at 714-15

(citations and internal quotation omitted).  "The law is clear that, in order to be entitled to an evidentiary hearing, a petitioner need only allege-not prove-reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Id. Aron* at 715 n. 6 (emphasis in original).  The uncontested affidavit filed with the § 2255, met the threshold requirement explained in *Aron*.  Here the threshold has been met and the court is required to address an evidentiary hearing as to whether DeCoste placed his financial interest and Newman's payments before Fonseca's defense.

> **D. Counsel rendered ineffective assistance when he failed to explain to Fonseca the application of the guidelines, the strength of the government's case and how the guidelines, along with the possibility of an upward variances, would play such an integral part in his final sentence, thus rendering his decision to proceed to trial unknowingly.**

Fonseca has a right to adequate counsel during the critical stages of the criminal process. *Caruso v. Zelinsky*, 689 F.2d 435 (3rd Cir. 1982).  He also "has the right to make a reasonably informed decision whether to accept a plea or proceed to trial." *United States v. Day*, 969 F.2d 39, 43 (3rd Cir.1992) (citing *Hill v. Lockhart*, 474 U.S. 52, 56-57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).  Even if that plea, was a straight plea to the charges with an acceptance of responsibility.  Here DeCoste's lack of advice, violated Fonseca's Sixth Amendment right to effective counsel since Fonseca was never explained the repercussions of proceeding to trial versus pleading guilty and mitigating the charges. (Exhibit A).  *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).  As an analogy, in *United States v. McCoy*, 215 F.3d 102 (D.C. Cir. 2000) counsel advised his client of an

incorrect application of the Sentencing Guidelines. On appeal, *McCoy* argued that his plea was unconstitutional because it was based on the ineffectiveness assistance of counsel.  The District of Colombia agreed; it found that *McCoy's* guilty plea had not been knowingly and voluntarily made. *Id.*  Following this analogy, Fonseca provides that his decision to proceed to trial was based on his attorney's lack of explanation of the strength of the government's case, the guidelines, upward departures and how acceptance of responsibility could be used to mitigate the final sentence, rendered the decision to proceed to trial involuntary.

The *McCoy* Court noted that "[W]hile not every error made in calculating an applying the guidelines would constitute deficient performance under *Strickland*, the Court emphasized that 'familiarity with the structure and basic content of the Guidelines, had become a necessity for counsel who seek to give effective representation.'" *Id.*  at 508  The Court further found that the prejudice prong of *Strickland* test was satisfied, in that the difference between the sentencing ranges was so significant that there was a reasonable probability that if *McCoy* had been given correct information he would not have entered a guilty plea. *Id.* Counsel's failure to familiarize himself with the relevant portions of the Sentencing Guidelines  causes his actions to fall below a reasonable standard of performance because a "[c]riminal defense attorneys practicing in the federal courts are expected to keep abreast of issues that affect his client's case." *Id. United States v. Loughery*, 908 F.2d 1014 (D.C. Cir. 1990).

Here, after the motion to suppress was denied (the most critical portion of the defense), Fonseca was not explained the strength of the government's case and the possibility of pleading guilty and mitigating the case without proceeding to trial. (Exhibit A)  In fact, the details of the complicated nature of this case was known to counsel all along.  The following colloquy between the parties as they prepared for trial supports this position as the government explained all its witnesses:

> We have at minimum eight witnesses that we must call because there have been no stipulations as to DNA, as to drugs, etcetera, so I anticipate that some of the witnesses will be quite lengthy. In addition, we will be putting on 911 calls, video, transcripts. There is a lot of evidence in this case. There are over 40 exhibits, 42 and based on what defense counsel set forth this morning. It seems like their case will have at least one. I know that they are not going to provide the exact number of witnesses at this time. They can't, but last week during the suppression hearing they also referenced additional evidence that they will attempt to put on in their case in chief that will potentially create a situation where we then put on a bit of rebuttal case.

*Id*. Dkt. 98 at 10.

Even during this detailed explanation by the government of all the witnesses, the 911 calls, videos and transcripts, there was still no explanation of the complicated and extensiveness of this case to Fonseca so he could avoid a trial and mitigate his case.  (Exhibit A).  The possibility of a resolution without a trial was never considered, due to the lack of explanation.

### 1. Fonseca's learning disability required a detailed explanation of the possibilities of resolving the case without a trial.

DeCoste was aware of Fonseca's learning disability as evidenced by reviewing Fonseca's prior State of Florida arrest[17] where it was determined, after a

---

[17] *State v. Fonseca*, F04-34972 and F05-009412.

competency hearing, that Fonseca had extensive learning disabilities. Several competency hearings were held in these cases to determine Fonseca's ability to understand the proceedings and his ability to understand the repercussions of the decision to plead guilty or proceed to trial. A simple review of the State of Florida's criminal docket would have revealed that Fonseca's learning disability warranted special care in explaining the case, its strength and the possibilities of resolving the case without a trial. Had a thorough explanation been made, Fonseca would not have proceeded to trial. (Exhibit A).

All Fonseca must only show that there is a *"reasonable probability"* that the results of his decision to proceed to trial would have been different, *Id. Williams v. Taylor,* 529 U.S. 362, 386, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) and based on the difference in sentencing guideline ranges, there could be no doubt that a different outcome is evident. (Exhibit A). It was the lack of information from counsel that led to the decision to proceed and not resolve the matter via a plea. All meetings with counsel and Fonseca on what was explained, or not explained are not part of the record before the court. Based on the record and the files before this Court, there is a reasonable probability that counsel's actions have reached a level of ineffectiveness as enumerated in *Strickland. United States v. Acklen,* 47 F.3d 739, 743-44 (5th Cir. 1995) (remanding for an evidentiary hearing where there was nothing in the record to indicate counsel's failures were attributable to strategic choice among all plausible alternatives available for defense); *United States v. Dawson,* 857 F.2d 923, 929 (3rd Cir. 1988) (absent evidence in the record, "this court

will not speculate on trial counsel's motives"); *Nichols v. United States,* 75 F.3d 1137 (7th Cir. 1996) (same).

### E. Appellate counsel ineffective for failing to raise on appeal that the District Court abused its discretion when it sentenced Fonseca 60-months above the Presentence Investigation Report's recommendation and the government's recommendation at sentencing.

When a habeas petitioner alleges that his counsel was ineffective for failing to raise an issue on appeal, the court reviews the merits of the omitted issue. *United States v. Cook,* 45 F.3d 388 (10th Cir. 1995); *United States v. Dixon,* 1 F.3d 1080 (10th Cir. 1993). The failure to raise an issue that is without merit "does not constitute constitutionally ineffective assistance of counsel," *Id.* at 1083 n.5, because the Sixth Amendment does not require an attorney to raise every non-frivolous issue on appeal. See *Jones v. Barnes,* 463 U.S. 745, 751, 77 L. Ed. 2d 987, 103 S. Ct. 3308 (1983). Thus, counsel frequently will "winnow out" weaker claims in order to focus effectively on those more likely to prevail. *Smith v. Murray,* 477 U.S. 527, 536, 91 L. Ed. 2d 434, 106 S. Ct. 2661 (1986); see *Tapia v. Tansy,* 926 F.2d 1554, 1564 (10th Cir.), cert. denied, 502 U.S. 835, 116 L. Ed. 2d 84, 112 S. Ct. 115 (1991).

However, "an appellate advocate may deliver deficient performance and prejudice a defendant by omitting a 'dead-bang winner,' even though counsel may have presented strong but unsuccessful claims on appeal." *Cook,* 45 F.3d 388, 1995 WL 24338, at * 6 (citing *Page v. United States,* 884 F.2d 300, 302 (7th Cir. 1989)).

In the instant case, the District Court's upward variance was an error. The issue of the variance was exclusively preserved at sentencing since the sentence was above, not only the sentence requested by the defense, but also by the sentence of

33

175 months recommended by the government. (Dkt. 103 at 35).  The government agreed, that post-trial, after all the evidence, that a sentence of "175 months is sufficient but not greater than necessary in this situation."  (Dkt. 103 at 35).   The court in imposing a sentence at 235 months clearly violated Title 18 U.S.C. § 3553 factors.  The issue was clearly preserved for appellate review and would have most likely resulted on a remand for resentencing.  However, the issue was never addressed since the matter was never raised for appellate review since appellate counsel rendered ineffective assistance.

### F. The cumulative impact of trial counsels errors addressed herein require an evidentiary hearing

Fonseca contends that each of the errors addressed herein was sufficiently prejudicial to require a reversal of his conviction. However, should the court disagree, then the cumulative effect of these errors deprived him of fair and just assistance of counsel.  "Individual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect ... so as to deny due process." *United States v. Fernandez*, 145 F.3d 59, 66 (1st Cir. 1998) See, e.g., *United States v Hands*, 184 F.3d 1322, 1334 (11th Cir. 1999); *United States v. Munoz,* 150 F.3d 401, 418 (5th Cir. 1998), *cert. denied*, 525 U.S. 1112 (1999).

The errors here were many, they were all interrelated, and their cumulative impact was devastating to Fonseca's right to due process and a clear violation of his Sixth Amendment right to effective assistance of counsel.

**G. An evidentiary hearing is necessary and would be useful to the court**

Title 28, United States Code, § 2255 provides that a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released or for reduction of a sentence may move the court which imposed the sentence to vacate, set aside or correct the sentence.  This section also provides as follows:

> "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."

*Id.* Title 28 U.S.C. § 2255

In the instant case as set forth in the Statement of Claim of the § 2255 motion, and the foregoing arguments, Fonseca has pleaded, presented evidence, and argued the applicable law to demonstrate that his conviction is violative of his Fifth and Sixth Amendment rights.  The allegations are already well established by the files and records of this case, many of the material allegations concern events which took place outside the courtroom and are not, therefore, part of the "files and records".  These allegations require an evidentiary hearing under well-settled law. *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (evidentiary hearing required unless § 2255 motion, files, and trial record "conclusively show" petitioner entitled to no relief); *Virgin Islands v. Weatherwax*, 20 F.3d 572, 573 (3rd Cir. 1994) (petitioner entitled to evidentiary hearing on ineffective assistance of counsel claim where facts viewed in light most favorable to petitioner would entitle him to relief); *Stoia v. United States*, 22 F.3d 766, 768 (7th Cir. 1994) (same); *Shaw v. United*

*States*, 24 F.3d 1040, 1043 (8th Cir 1994) (same); *Nichols v. United States*, 75 F.3d

1137, 1145-46 (7th Cir. 1996) (petitioner entitled to evidentiary hearing on claim of

ineffective assistance of counsel when record inconclusive on issue); *United States v.*

*Witherspoon*, 231 F.3d 923 (7th Cir. 2000).

Based on all of the foregoing, Fonseca respectfully requests this Honorable

Court to ORDER an evidentiary hearing where he can prove his case.

## CONCLUSION

WHEREFORE MOVANT   Damaso Rivera Fonseca respectfully asks this

Honorable Court to (A) ORDER an evidentiary hearing as set forth in his § 2255

motion; and, upon proof of his allegations herein, ORDER that his conviction and

sentence be VACATED.

Done this 21e, day of December 2019.

Respectfully submitted,

Damaso Rivera-Fronseca
Register Number 06407-104
USP Coleman I
P. O. Box 1033
Coleman, Florida 33521

## SWORN AFFIDAVIT
## DAMASO RIVERA FONSECA

Comes now, Damaso Rivera Fonseca, under penalty of perjury pursuant to Title 28 U.S.C. § 1746 and provides this sworn affidavit in support of his Title 28 U.S.C. § 2255 and provides as follows:

1.     I am Damaso Rivera Fonseca and I am the Petitioner in this cause and the defendant in *United States v. Fonseca,* 1:15cr20802.

2.     I was represented in my criminal case by Attorney Christopher DeCoste ("DeCoste") during the criminal trial and sentencing.

3.     I was represented by Attorney Mark Katzef ("Katzef") during the direct appeal.

4.     My girlfriend at the time, Bridget Newman, ("Newman") was at the scene on the day of my arrest.

5.     Newman is involved in the boating industry and at the time retained, paid and was solely responsible for paying my legal fees to DeCoste. She was my direct contact with DeCoste as she was 100% responsible for all finances.

6.     It was discussed that Newman (who was resolving her own legal State matters through DeCoste, his associates and other friend attorneys), was going to testify for the defense during my trial.

7.     When Newman was called to the U.S. Attorney's office for the government, DeCoste handled the matter.

8.      Newman was on standby to testify for the defense but was not called, that the paraphernalia and firearm located in the van on the day of the arrest was not owned nor possessed by Fonseca.

9.      Newman was going to testify that there was no robbery planned, that I was not going to utilize the firearm and that she made no statements of any robbery on the day of the arrest.  In fact, Newman was going to testify for the defense that she was high on drugs the day of the arrest and that I did not intend to rob anyone nor use the firearm.  This statement is consistent with the opening statements by co-counsel Tara N. Kawass ("Kawass")  during opening arguments (Dkt. 198 at 94).

10.     Newman was on standby, following DeCoste's directives at all times during the trial and ready to testify for the defense, however, it is unknown why DeCoste did not call her, although she was paying his fees.

11.     Newman paid DeCoste a substantial amount of money to represent Fonseca during the trial, prepared her for the defense, and then failed to call her for the defense.

12.     It was never explained to me that by Newman paying DeCoste there was a conflict.

13.     I was misled by DeCoste that Newman was a viable witness for the defense.

14.     During the preparation for trial, I was always told by DeCoste, that by Newman testifying the chances of victory were enhanced for the defense.

15.    DeCoste never explained the strength of the government's case, the guidelines, sentence enhancements, nor upward departures.

16.    DeCoste was aware I have never been arrested by the federal authorities and that I was evaluated on several prior cases due to my learning disability.

17.    Had DeCoste explained to me the strength of the government's case, the guidelines, sentence enhancements, or upward departures, even in the simplest terms, I would plead guilty, mitigated by sentence, and would not have proceeded to trial.

18.    Most of the contact, in this case, was between Newman and DeCoste.

19.    It was no until I arrived at my jail, that I was explained by other inmates how my case developed, how my sentence was calculated and how I received the sentence I received.

20.    After that review at the jail, is when I began to comprehend the strength of the government's case.

21.    I never had that kind of explanation from DeCoste.  Had the complicated nature of my case been explained, even in the simplest terms, I would not have proceeded to trial and would have mitigated my term of incarceration.

22.    I feel that DeCoste was frustrated with my learning disability and did not have the time or patience to explain to me the resolutions of my case, apart from proceeding to trial.

3

23.     Know that I have been explained the strength of the government's case, the guidelines, sentence enhancements, and upward departures, I realize that my decision to proceed to trial was in error and guided by DeCoste and Newman.

24.     On appeal, I was represented by Attorney Katzef.

25.     Katzef was aware that I wanted to appeal to all aspects of my case, especially the upward departure.

26.     Katzef did not review with me the appellate brief, nor the issues to present on appeal.

27.     Most emails that I sent to Katzef were not addressed nor replied to.

28.     Katzef did not file the issue on appeal addressing the District Court's improper upward variance that I requeted.

29.     I was forced to raise on appeal my own issues, that the Court did not consider since I was represented by Katzef.

30.     I explicitly requested from Katzef that non-frivolous issues be raised on appeal, however, Katzef refused to even address my calls or emails.

31.     I relied in all respects on DeCoste for my case and Katzef for my appeal.

Executed under penalty of perjury pursuant to Title 28 U.S.C. § 1746 this _26_

day of December 2019.

Respectfully submitted,

_____
Damaso Rivera-Fronseca
Register Number 06407-104