UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO: 15-20802-CR-GAYLES

UNITED STATES OF AMERICA

v.

DAMASO RIVERA FONSECA,

Defendant.

_____/

FILED BY _____ D.C.

APR - 2 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## REPLY TO RESPONSE TO MOTION FOR COMPASSIONATE
## RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(I)

COMES Defendant, Damaso Rivera Fonseca ("Fonseca"), appearing *pro se,* and files his

Reply to Response to Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(I),

and would show as follows:

### PRELIMINARY STATEMENT

As a preliminary matter, Fonseca respectfully requests that this Court be mindful that courts

have a duty to construe *pro se* motions liberally. See *Caldwell v. Warden*, 748 F.3d 1090 (11th Cir.

2014); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); and *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### REPLY TO GOVERNMENT'S RESPONSE

The Response to Motion for Compassionate Release Pursuant to 18 U.S.C. §

3582(c)(1)(A)(I) ("GR") is divided into four (4) main sections: (I) Course of Proceedings; (II)

Offense Facts; (III) Motion for Compassionate Release under Section 3582(c)(1); and (IV)

Conclusion. The opening to the GR contends that Fonseca has not established extraordinary and

compelling reasons for relief under those provisions, consideration of the factors at 18 U.S.C. §

3553(a), as well as U.S.S.G. § 1B1.13(a)(2) and 18 U.S.C. § 3142(g), does not support the relief

requested. Fonseca objects for the reasons that follow below and the reasons previously stated in his motion for compassionate release. He will reply sequentially to each main section of the GR, their respective subsections and sub-parts as follows:

## I.      Course of Proceedings

Fonseca does not object or take exception to this main section of the GR.

## II.     Offense Facts

Fonseca does not object or take exception to this main section of the GR.

## III.    Motion for Compassionate Release under Section 3582(c)(1)

This main section is divided into four subsections as follows:

### A.     Legal Standard

Fonseca does not object or take exception to this subsection of the GR.

### B.     Administrative Remedies

Fonseca does not object with the exception of the last sentence, which states that "The motion is nevertheless due to be denied on its merits." GR at 4. For the reasons that follow below and the reasons initially raised in his motion for compassionate release, Fonseca's should be granted the relief requested herein.

### C.     Defendant's Motion is Meritless

Fonseca objects for the reasons that follow below.

#### 1.      Defendant's Medical Condition Under U.S.S.G. § 1B1.13(b)(1)(B)(ii)

In this subsection of the GR, the government misapplies the standard for compassionate release. The Supreme Court has recognized that the First Step Act grants courts broad discretion to determine what constitutes "extraordinary and compelling reasons" for compassionate release. See

*Concepcion v. United States*, 597 U.S. 481, 488 (2022) (noting that district courts may "consider any extraordinary and compelling reason" that justifies relief). The government erroneously relies on Bureau of Prisons' ("BOP") medical records as conclusive proof that Fonseca does not suffer from a severe enough mental health condition to warrant release. However, under United States v. *Bryant*, 996 F.3d 1243, 1252 (11th Cir. 2021), courts are not bound by the BOP's assessments but may independently determine whether a defendant's condition substantially diminishes their ability to provide self-care.

The BOP's medical assessments are insufficient to overcome the defendant's evidence of severe mental health impairment.The government argues that Fonseca's symptoms are "within normal limits" based on selective citations to BOP records. This conclusion, however, is inconsistent with *United States v. McCoy*, 981 F.3d 271, 285 (4th Cir. 2020), which emphasizes that courts must make an individualized assessment rather than rely on categorical BOP determinations. Furthermore, the BOP's failure to diagnose Fonseca's PTSD until August 26, 2024, despite his ongoing symptoms, underscores the inadequacy of the prison's mental health care system.

In *Brown v. Plata*, 563 U.S. 493, 510 (2011), the Supreme Court explicitly recognized that inadequate mental health treatment in prison can lead to cruel and unusual punishment under the Eighth Amendment. Here, the Defendant's medical records reflect a serious and ongoing condition that has only recently been diagnosed, indicating an existing gap in care. Courts have found that untreated or insufficiently treated mental illness may qualify as an extraordinary and compelling reason for compassionate release. See *United States v. Beck*, 425 F. Supp. 3d 573, 580 (M.D.N.C. 2019) (holding that "inadequate medical care, particularly for serious mental health conditions, may provide a basis for compassionate release").

3

Here, Fonseca's mental health condition substantially diminishes his ability to provide self-care. The government contends that because the BOP has not placed medical duty restrictions on Defendant, his condition does not substantially diminish his ability to provide self-care. This reasoning is flawed. In *United States v. Rothbard*, 851 F. App'x 853, 856 (11th Cir. 2021), the Eleventh Circuit emphasized that "the standard does not require total incapacity; rather, it asks whether the prisoner's ability to care for himself is substantially diminished." Here, Fonseca's PTSD, anxiety, and mood disorder significantly impair his ability to manage his daily life within the restrictive environment of prison. His ability to function outside of a highly structured setting, particularly without proper treatment, would be severely compromised.

Furthermore, the government's reliance on the absence of medical duty restrictions is misleading. In *United States v. Brooker*, 976 F.3d 228, 238 (2d Cir. 2020), the Court ruled that the compassionate release standard is not limited to BOP classifications but requires a holistic review of the defendant's condition. Fonseca's mental health issues, as documented, meet this standard by interfering with his ability to function effectively within the confines of incarceration.

For the foregoing reasons, the Court should reject the government's argument and find that Fonseca has demonstrated extraordinary and compelling reasons warranting compassionate release. The totality of the circumstances, including the inadequacy of prison mental health care, the serious nature of his PTSD, and the legal precedents supporting individualized judicial assessments, all weigh in favor of granting the motion for compassionate release.

4

     2.       In Opposition to Government Response Regarding Fonseca's Motion for Compassionate Release under U.S.S.G. § 1B1.13(b)(6).

The government's argument in the GR against Fonseca's eligibility for compassionate release under U.S.S.G. § 1B1.13(b)(6) is flawed for several reasons, particularly in its interpretation of what constitutes an "unusually long sentence" and the applicability of changes in the law. The government's response fails to consider the broader equitable considerations emphasized by the U.S. Supreme Court and the Eleventh Circuit in evaluating compassionate release motions.

An "Unusually Long Sentence" should be interpreted in light of Supreme Court and Eleventh Circuit Precedent. The government asserts that Fonseca does not qualify because he has not served at least ten years of his sentence. However, courts have recognized that the term "unusually long sentence" is not a rigidly defined concept and must be considered in light of evolving sentencing norms and proportionality principles.

In *Pepper v. United States*, 562 U.S. 476, 490 (2011), the Supreme Court emphasized that sentencing decisions should reflect an individualized assessment of the defendant's circumstances, including post-sentencing rehabilitation and disparities created by evolving sentencing frameworks. The Eleventh Circuit has similarly acknowledged that courts must consider whether the sentence imposed remains just in light of current sentencing norms. See *United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021) (recognizing the necessity of evaluating whether a sentence remains consistent with contemporary legal standards).

While the government contends that Fonseca's sentence does not qualify as "unusually long," the Eleventh Circuit has recognized that sentences disproportionate to those imposed under current law may meet this criterion. See *United States v. McCoy*, 981 F.3d 271, 285-86 (4th Cir. 2020), cited

5

favorably in the Eleventh Circuit, found that sentences which are now substantially longer than what current law would impose may constitute extraordinary and compelling circumstances.

A change in the law need not be explicitly retroactive to warrant relief. The government argues that because there is no explicit retroactive statutory change applicable to Fonseca's offenses under 18 U.S.C. §§ 924(a)(2), 924(c)(1)(A)(i), or 21 U.S.C. § 841(b)(1)(D), he cannot qualify under U.S.S.G. § 1B1.13(b)(6). However, this interpretation is inconsistent with Supreme Court precedent, which supports considering changes in sentencing law even where Congress has not made them formally retroactive.

In *Dorsey v. United States*, 567 U.S. 260, 281 (2012), the Supreme Court recognized that sentencing disparities caused by statutory changes should be addressed when they create unjust outcomes. Similarly, the Eleventh Circuit has acknowledged that courts have discretion to consider disparities in sentencing created by evolving law. See *United States v. Jones*, 962 F.3d 1290, 1297-98 (11th Cir. 2020) (noting that district courts have broad discretion in granting compassionate release based on legal changes even when those changes are not categorically retroactive).

In fact, equity and sentencing disparities support Fonseca's release. Even if the government is correct that Fonseca has not yet served ten years, the Eleventh Circuit has emphasized that courts are not strictly bound by rigid mechanical interpretations of compassionate release criteria. See *United States v. Bryant*, 996 F.3d at 1262, explicitly acknowledges that district courts retain discretion to consider whether the continued incarceration of a defendant is unjust. Moreover, *Concepcion v. United States*, 597 U.S. 481 (2022), reaffirmed that courts must consider all relevant factors when evaluating requests for relief, including post-sentencing developments in the law and rehabilitation efforts.

6

Fonseca's case presents a clear example of how evolving legal principles and proportionality concerns warrant relief. His continued incarceration under a sentencing regime that would no longer apply today produces the very type of gross disparity that the U.S.S.G. § 1B1.13(b)(6) seeks to rectify.

Therefore, the government's opposition misinterprets the framework of U.S.S.G. § 1B1.13(b)(6) and disregards controlling Supreme Court and Eleventh Circuit precedent that favors individualized assessments of sentencing disparities. Fonseca's case presents "extraordinary and compelling" reasons for compassionate release, and this Court should grant his motion in light of both evolving sentencing norms and equitable considerations.

D.    The Court must Conduct a New § 3553(a) Analysis, Not Merely Rely on Prior Findings

The government incorrectly argues that prior sentencing findings remain dispositive. However, the Supreme Court and Eleventh Circuit have repeatedly held that courts must conduct an individualized reassessment of the § 3553(a) factors in light of a defendant's post-sentencing conduct and changed circumstances. See *Concepcion v. United States*, 142 S. Ct. 2389, 2396 (2022) (holding that district courts must consider intervening legal and factual developments when reassessing a defendant's sentence); *United States v. Trujillo*, 713 F.3d 1003, 1011 (11th Cir. 2013) (sentencing courts have a continuing duty to reconsider sentencing factors in appropriate contexts).

Fonseca has demonstrated rehabilitation and changed circumstances that merit a fresh analysis of the § 3553(a) factors. The government relies on past conduct and disciplinary infractions without addressing his mitigating factors, which include educational achievements, consistent employment while incarcerated, and significant familial support upon release. As the Supreme Court

7

held in *Pepper v. United States*, 562 U.S. 476, 490 (2011), courts "must take into account post-sentencing rehabilitation in assessing whether to modify a sentence."

The government's prediction of future dangerousness is speculative and contrary to Eleventh Circuit precedent. The government asserts that Fonseca's criminal history and prior firearm possession make him a continuing danger to society. However, courts have consistently rejected speculative future dangerousness as a basis for denying compassionate release. In *United States v. Cook*, 998 F.3d 1180, 1185 (11th Cir. 2021), the Eleventh Circuit emphasized that district courts must weigh current rehabilitation efforts and changed circumstances rather than rely solely on past offenses. Similarly, in *United States v. McDonald*, 28 F.4th 553, 561 (5th Cir. 2022), the Court held that "a mere history of violent offenses does not categorically preclude a finding of rehabilitation."

The government's reliance on Fonseca's BOP infractions is equally flawed. Minor disciplinary violations are common in prison settings and do not inherently suggest an inability to reintegrate into society. Courts have held that rehabilitation should not be assessed solely on past infractions but on an individual's demonstrated efforts to change. See *United States v. Brown*, 457 F. Supp. 3d 691, 705 (S.D. Iowa 2020) (noting that "isolated prison infractions do not necessarily indicate an ongoing danger to society").

The government's response fails to adequately rebut Fonseca's "extraordinary and compelling" reasons for release under § 3582(c)(1)(A) and U.S.S.G. § 1B1.13. As the Supreme Court recognized in *Concepcion*, 142 S. Ct. at 2396, district courts have broad discretion to consider "all relevant factors," including rehabilitation, medical conditions, and family circumstances.

Specifically, the government has failed to respond to Fonseca's *Bruen* argument in light of the "historical tradition of firearm regulation". Because the government has not responded to his

argument, they have waived this claim and it should be decided on the merit of Fonseca's motion for compassionate release.

Here, Fonseca has presented compelling grounds, including significant medical conditions that the BOP has failed to adequately address, his firearm rights in light of *Bruen,* his extensive rehabilitative efforts, and the need to care for an ailing family member. The government's argument disregards the Eleventh Circuit's recent recognition that compassionate release is not limited to terminal illness but extends to a broader set of factors. See *United States v. Bryant,* 996 F.3d 1243, 1252-53 (11th Cir. 2021).

Accordingly, Fonseca respectfully requests that the Court grant his motion for compassionate release. The government's reliance on outdated and speculative assertions is inconsistent with Supreme Court and Eleventh Circuit precedent, which require an individualized and updated analysis of the § 3553(a) factors in light of changed circumstances.

## IV.    Conclusion

For the above and foregoing reasons and the reasons previously presented in his original motion for compassionate release, Fonseca respectfully requests that the Court grant his motion for compassionate release. The government's reliance on outdated and speculative assertions is inconsistent with Supreme Court and Eleventh Circuit precedent, which require an individualized and updated analysis of the § 3553(a) factors in light of changed circumstances.

Fonseca has demonstrated that extraordinary and compelling reasons warrant a sentence reduction and that his post-sentencing conduct supports relief under § 3553(a). Given his medical conditions, rehabilitative progress, and the absence of any imminent risk to public safety, continued incarceration is no longer justified. The Court should exercise its broad discretion under §

9

3582(c)(1)(A) to grant compassionate release and impose any necessary supervised release conditions to ensure a successful reintegration into society.

Respectfully submitted,

Dated: March 28, 2025

DAMASO RIVERA FONSECA
REG. NO. 06407-104
USP HAZELTON
U.S. PENITENTIARY
P.O. BOX 2000
BRUCETON MILLS, WV 26525
Appearing *Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2025, I mailed a true and correct copy of the above and foregoing Reply to Response to Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(I) was sent via U.S. Mail, postage prepaid, to Joseph M. Schuster, Assistant U.S. Attorney at U.S. Attorney's Office, 99 NE 4th Street, Miami, FL 33132.

DAMASO RIVERA FONSECA

10



**UNITED STATES POSTAL SERVICE.**

**Click-N-Ship®**

9405 5301 0935 5124 9618 64 0087 1000 0303 3128

U.S. POSTAGE PAID
Click-N-Ship

Mailed from 26525   59332511562032

**P**

usps.com
$8.71
**US POSTAGE**
Cubic
15.00L+13.00W

03/28/2025

**PRIORITY MAIL®**

03/31/2025

**RDC 03**

C075

REC'D BY _____ D.C.

APR - 2 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

REG. NO. 06407-104, USP HAZELTON, U.S. PEN.
DAMASO R FONSECA
PO BOX 2000
BRUCETON MILLS WV 26525-2000



CLERK OF COURT
ANGELA E NOBLE
RM 8N09
400 N MIAMI AVE
MIAMI FL 33128-1805

**USPS TRACKING #**



9405 5301 0935 5124 9618 64



---

PRESS FIRMLY TO SEAL


FSC
MIX
Board
FSC® C116916

**UNITED STATES POSTAL SERVICE®**

**PRIORITY MAIL**

delivery date specified for domestic use.

shipments include $100 of insurance (restrictions apply).*

cking® service included for domestic and many international destina

ternational insurance.**

d internationally, a customs declaration form is required.

s not cover certain items. For details regarding claims exclusions see the
Manual at *http://pe.usps.com.*

onal Mail Manual at *http://pe.usps.com* for availability and limitations of coverage.

To schedule free Package Pi
scan the QR code.



USPS.COM/PICKUP

how2recycle.info
PAPER
POUCH

**RATE ENVELOPE**
■ ANY WEIGHT



**KED ■ INSURED**

EP14F October 2023
OD: 12 1/2 x 9 1/2

0001000014

PRESS FIRMLY TO SEAL